FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

FEB 21 2017

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

DAVID A. STEBBINS                                                PLAINTIFF

VS.                    CASE NO. 4:16-cv00878-BSM

STATE OF ARKANSAS AND
BOONE COUNTY CIRCUIT CLERK                           DEFENDANT

## RESPONSE TO [013] MOTION TO DISMISS BY BOONE COUNTY CIRCUIT CLERK

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Response to the Motion to Dismiss (Doc. 13) filed on behalf of the Boone County Circuit Clerk.

1. Before we begin, I wish to

    (a) First, this court cannot issue a ruling for any motion without giving any explanation behind its ruling. Even when the Court's actions are discretionary (which they are not in a Motion for Summary Judgment), to issue a ruling without an explanation is an automatic abuse of discretion.

    i. See US v. Burrell, 622 F. 3d 961, 964 (8th Cir. 2010) ("We have held that a district court need not give lengthy explanations ... but this does not permit a district court to give no explanation for its decision"); see also Rayes v. Johnson, 969 F. 2d 700, 704-705 (8th Cir. 1992) ("The district court may have had reason to deny Rayes' request for subsequent counsel, but no explanation appears in the record. The request was summarily denied twice").

    ii. See also Slaughter v. City of Maplewood, 731 F. 2d 587, 589 (8th Cir. 1984) ("we neverthe-less find it necessary to remand because we cannot determine from the record whether the district court exercised a reasoned and well-informed discretion, so as to permit our review for abuse of discretion")

iii. See also Foman v. Davis, 371 US 178, 182 (1962) ("[O]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules").

iv. See also Gulf Oil Co. v. Bernard, 452 US 89, 103 (1981) ("We conclude that the imposition of the order was an abuse of discretion. The record reveals no grounds on which the District Court could have determined that it was necessary or appropriate to impose this order").

v. See also US v. Walters, 643 F. 3d 1077, 1080 (8th Cir. 2011) ("given the lack of specific findings and the evidence in the record, we find that the district court abused its discretion").

vi. See also Jarrett v. ERC Properties, Inc., 211 F. 3d 1078, 1084 (8th Cir. 2000) ("The district court's good faith finding was stated in conclusory fashion with no explanation ... Therefore, the court abused its discretion").

vii. See also Thongvanh v. Thalacker, 17 F. 3d 256, 260 (8th Cir. 1994) ("A careful review of the record reveals no explanation whatsoever for the reduction. Accordingly, the jury award of $4,000 is restored.").

viii. See also Purcell v. Gonzalez, 549 US 1, 8 (2006) ("There has been no explanation given by the Court ... we vacate the order of the Court of Appeals")

ix. See also Press-Enterprise Co. v. Superior Court of Cal., Riverside Cty., 464 US 501, 513 (1984) ("Thus not only was there a failure to articulate findings with the requisite specificity but there was also a failure to consider alternatives to closure and to total suppression of the transcript. The trial judge should seal only such parts of the

transcript as necessary to preserve the anonymity of the individuals sought to be protected.").

    x.    See also United States v. Grinnell Corp., 384 US 563, 579 (1966) ("The District Court gave no explanation for its refusal to grant this relief. It is so important and customary a provision that the District Court should reconsider it").

    xi.    See also Delaware v. Van Arsdall, 475 US 673, 680 (1986) ("In so doing, it offered no explanation why the Chapman harmless-error standard ... is inapplicable here.")

(b)    Second, this court cannot raise any defenses on the Defendant's behalf, sua sponte, unless it pertains to the Court's subject-matter jurisdiction.

    i.    See Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011) ("'Under [the adversarial system], courts are generally limited to addressing the claims and arguments advanced by the parties. Courts do not usually raise claims or arguments on their own")

    ii.    See also Sanchez-Llamas v. Oregon, 548 US 331, 356-57 (2006) ("The consequence of failing to raise a claim for adjudication at the proper time is generally forfeiture of that claim. As a result, rules such as procedural default routinely deny 'legal significance' ... to otherwise viable legal claims")

    iii.    See also Sayre v. Musicland Group, Inc., 850 F. 2d 350, 353 (8th Cir. 1988) (failure to plead affirmative defenses constitutes waiver of that defense, even if not specifically listed in Rule 8(c)).

    iv.    See also Sartin v. Commissioner of Pub. Saf. of St. of Minn., 535 F. 2d 430, 433 (8th Cir. 1976) (same).

(c)    As such, whatever defenses the Defendants raised in their responsive pleading are the

defenses they are stuck with. This Court cannot "bail out" the Defendants by raising defenses the Court believes to be meritorious but that the Defendants "forgot" to raise. This Court must restrict its consideration to the claims raised in the Complaint and the defenses raised in the Answer ... and absolutely nothing else!

2. With that said, let us discuss the Motion to Dismiss.

3. First, the grounds for dismissal for failure to state a claim are very stringent. The Supreme Court, in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007) (cited by the Defendant), makes perfectly clear that there is an "accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See *id* at 1968. It is black letter law that this Court cannot simply find it improbable that "an in forma pauperis complaint may not be dismissed ... simply because the court finds the plaintiff's allegations unlikely ... for truth is always strange, Stranger than fiction." See Denton v. Hernandez, 504 US 25, 33 (1992).

4. With that established, the Defendant itself appears to be confused as to what are its grounds for dismissal. The Motion itself mentions qualified immunity. The Motion references a Brief (Doc. 14), which the Motion promises will go into more detail. However, the Brief only discusses the sufficiency of the factual allegations in the Complaint and never once even mentions qualified immunity, let alone discusses it. This is ultimately a minor, trivial issue, and therefore, I will not dwell on this issue beyond this paragraph. However, I still believe it is worth mentioning because, as we will soon see, the Defendant being confused as to what the issues are is actually a major, recurring theme in the Motion to Dismiss.

### I. Qualified Immunity

5. First, let's get the issue out of the way that the Defendants have raised but failed to do

anything beyond that: The issue of qualified immunity.

6.     Simply put, there is none. All immunity has been expressly abrogated for violations of the Americans with Disabilities Act. See 42 USC § 12202.

7.     When applied against state governments, this statute must be weighed against the Eleventh Amendment. This has proven to be complicated at best. First the Eighth Circuit stated that 42 USC § 12202 is not a valid abrogation of 11th Amendment immunnity; see Alsbrook v. City of Maumelle, 184 F. 3d 999 (8th Cir. 1999). Then the U.S. Supreme Court decided that it was indeed a valid abrogation of 11th Amendment immunity; see Tennessee v. Lane, 541 US 509 (2004). Then the Eighth Circuit decided that this precedent only applied to cases where a plaintiff was barred court access; see Bill M. v. Nebraska Dept. HHS, 408 F. 3d 1096, 1100 (8th Cir. 2005). Then the U.S. Supreme Court held that it was a valid abrogation in *any* case that "actually violates" the Fourteenth Amendment[1]; see United States v. Georgia, 546 US 151 (2006). It's enough to make your head spin.

8.     However, none of that matters here. The Court can take judicial notice that the Boone County Circuit Clerk is an arm, not of the State of Arkansas, but of Boone County, Arkansas, hence why they are appearing separately from the State of Arkansas and are represented by separate counsel. Even the Motion to Dismiss itself refers to the Boone County Circuit Clerk as a "Separate Boone County Defendant." It is black letter law that there is no inherent federal sovereign immunity for local governments sued in federal court. See Lincoln County v. Luning, 133 US 529 (1890). While federal courts have traditionally been willing to extent state-level sovereign immunities to local governments in the absence of conflicting federal law, it is important to note the part that says "in the absence of conflicting federal law." Unlike state

---

1  In other words, any case that would be equally cognizable under 42 USC § 1983, the default statute for adjudicating constitutional disputes against state & local government officers.

governments – who receive special considerations on statutory construction since their immunity is embedded in the Constitution – all it takes is a regular Act of Congress, not a Constitutional Amendment, to abrogate the immunity of local governments.

9. This is something that the Americans with Disabilities absolutely and unquestionably has done.

10. As such, the Defendant's claim of qualified immunity is patently frivolous and should be thrown out.

## II. Disability & Statutorily Protected Activity

11. Next, the Defendant attempts to controvert whether or not I have a disability. As I said before, they are completely confused as to what the issues are.

12. They accurately recite the essential elements for retaliation. They correctly recite that, ot establish a claim for retaliation, I must demonstrate A) a statutorily protected activity, B) an adverse action from the Defendant, and C) a causal connection between the adverse action and the statutorily-protected activities. After that, however, their argument goes completely off the rail.

13. They subsequently attempt to argue that I am not disabled.

14. Again, they seem to be confused as to what the issues are. They appear to believe that they are being sued for a claim of disability discrimination, not retaliation under the ADA, as evidenced by their sentence "no reasonable juror could conclude that [an adverse action] was the Circuit Clerk's attempt to intentionally retaliate, **_on the basis of disability_**, against a litigant" (emphasis added).

15. The Defendant has completely missed the boat here. They are not arguing that I have failed to allege that I have engaged in statutorily protected activities. As such, this Court cannot

adjudicate the sufficiency of those allegations, since they are not before the Court, and the Court cannot raise any claims, except those of subject-matter jurisdiction, that have not been raised by the parties; see ¶ 1(b)-(c) of this Response.

16. I am not required to sufficiently allege that I have a disability when I'm suing for retaliation. They might as well be arguing that I have failed to allege that the Defendant has a pet[2]. It is not an essential element of the tort I am suing for.

### III. Interactions with the Plaintiff

17. This one is just stupid.

18. The Defendants maintain that I have failed to allege that I ever interacted with the Circuit Clerk. Their exact words are "In fact, the Complaint doesn't allege any interaction between the Plaintiff and the Circuit Clerk at all (no reasonable juror could conclude that the [adverse action] was the Circuit Clerk's attempt to intentionally retaliate ... against a litigant ... with whom she had no interaction)."

19. This is absolutely baffling.

20. Do you know what *else* I have "failed to allege" in the complaint?

- The Rhonda Watkins is even human (aka a member of the *homo sapien* species) to begin with!
- I am a citizen of the United States.
- I am 18 years of age or older and therefore have standing to file my own federal lawsuits without parental supervision.
- The Defendant even has a duty to keep and maintain any court records in the first place!

21. All of these are things that, if found to be untrue, would be an absolute bar to any federal

---

2 After all, how can a neighbor be liable for a dog biting the Plaintiff if the Defendant doesn't even own a dog in the first place?! Never mind that that's completely unrelated to what the Plaintiff is actually suing them for!

relief. However, the Defendant does not complain about my supposed failure to plead these things. Do you know why?

22. Because some things are just so obvious that they do not need to be explicitly stated. Some things just go without saying.

23. For that matter, would you really *want* me to explicitly state these things? The Federal Rules of Civil Procedure require a "short and concise statement of facts." To repetitively and redundantly state these sorts of things that anyone with half a brain can figure out for themselves would defeat the purpose of Complaints being "short and concise."

24. My alleged interaction with the Circuit Clerk is one of those things that goes without saying.

25. It is *literally impossible* that I never interacted with the Circuit Clerk in any capacity. Absolutely impossible!

26. If I never interacted with the Circuit Clerk, then how could I possibly have had a jury trail in the state court? How could I possibly have filed an appeal in the first place if I didn't get the record from the Circuit Clerk?

27. I necessarily interacted with the Circuit Clerk in small chunks when I filed my pleadings, motions, and briefs in the state court case. The Court can take judicial notice of that. It is public record that I was pro se in that case (and therefore, had no attorney liaison to interact with the Clerk on my behalf), and therefore, I had to make all filings myself. This means I interacted with the Clerk.

28. It is absolutely bonkers for the Defendant to deny that I ever interacted with her in any way. This is a patently frivolous denial that is worthy of sanctions.

    **IV:    The Adverse Action**

29. Next, the Defendants appear confused as to what adverse action I am complaining about. They appear to believe that I am only complaining about their failure to include a copy of the Jan. 23, 2015 order in the first instance. They even go so far as to state that this is the only adverse action I have even alleged, let alone sufficiently plead, when they state that I have alleged "only a single factual failure" by the Defendant, and that this is it; see Doc. 14, p. 2.

30. Simply put, that is not the case. While I did mention the Circuit Clerk's failure to include this order when they filed the record initially, that was done in order to set up for the adverse actions that are in fact the main point of the current complaint.

31. On September 7, 2016, the Arkansas Court of Appeals entered an order demanding that the Clerk's Office supplement the record. The Defendant even quotes from this order in their own Brief, so they obviously do not contest the validity of this order.

32. The order made it perfectly clear that the Clerk was to complete this task by October 7, 2016. The online case event reflects this, showing that the deadline to file the supplemental record was October 7, 2016.

33. This order was never complied with. Ever.

34. More importantly, the Defendant made no effort to justify her refusal to comply with the order.

35. The Complaint in this case does not allege "only a single factual failure." In the Complaint, I believe I made myself perfectly clear that I was complaining about not one, not two, but THREE adverse actions: The Clerk's failure to supplement the record, the Clerk's failure to explain itself when it first had the chance in order to avoid the appearance of impropriety, and the State's failure to take any action whatsoever to enforce the law.

36. In this Brief, the Defendants state, in pertinent part, "in fact, no order or any other

document was filed in the underlying case on January 23, 2015." See Doc. 14, p. 3. For the reasons stated above, this is almost certainly pretextual, because this is literally the first time they have even attempted to bring this up.

37. It's like I said in the Complaint and Jury Demand:

> "Even if the Circuit Clerk had a pretextual excuse for not complying with the order in a timely manner, there is virtually no excuse – pretextual or otherwise – **for why they never made any effort to explain themselves prior to the October 7,** 2016 deadline, when she first had the chance and could have avoided any outward appearance of impropriety. Furthermore, **the State of Arkansas has no excuse,** other than retaliatory motive, for not taking any action to enforce the law against **the Circuit Clerk. Even in the astronomical chance that the Defendants could offer** a pretextual excuse for any one of these adverse actions, it would be impossible **for them to conjure up even the most hypothetical excuse that would** simultaneously justify all three."
> - Doc. 2, ¶ 27.

38. If the Defendant is indeed telling the truth when they say that there was no order filed on January 23, 2015 (and that remains to be seen), then the second adverse action becomes the proximate cause of my injury.

39. To help illustrate this point, let's take a hypothetical trip into an alternate universe.

40. Before we continue, I want to make something perfectly clear: I DO NOT CONCEDE that there never was an order entered on January 23, 2015 in the first place. That has yet to be proven. There is no evidence at all – not even the Defendant's uncorroborated word[3] – to support this statement. Everything I am stating in this upcoming section is 100% "for the sake of argument."

41. Up to September 6, 2016, everything in this alternate universe unfolded exactly as it did in our universe. However, this time, after receiving a copy of the Order to Supplement, the Boone County Circuit Clerk actually *fulfilled* her common law tort duty to act as a reasonably

---

3 There is no affidavit and no indication that this was ever testified to under oath. The Defense Counselor's statement about this in the Brief in support of a motion does not count as "testimony."

prudent person would and raised this argument in a timely manner. Instead of waiting until she is sued in federal court for her omission, she instead filed a Motion, not with the federal district court, but with the AR Court of Appeals, to dissolve the order to supplement on the grounds that she has already done everything she can.

42.  Suppose, for a minute, that the AR Court of Appeals chooses to believe her and realizes that she cannot (as opposed to will not) fulfill this order. The AR Court of Appeals would then have a variety of options at its disposal:

- Issue a new order, this time directed towards the special judge Russel Rogers, to provide a copy of the order in the case.
- Remand the case back to the Circuit Court for further proceedings on the grounds that, because the order never got filed, that means that the issues were never properly adjudicated in the first place, and therefore, an appeal was premature. The Circuit Court would then be ordered to conduct further proceedings and adjudicate these issues on the merits in the first instance.

43.  The implementation of any one of these plans would have removed any prejudice and injury I suffered in the real world. But in order to take that first step, the Clerk has to fulfill her common law tort duty to act as a reasonably prudent person would and disclose her inability to comply with the order in a timely manner.

44.  Again, I wish to reiterate that, in making this thought experiment, I am not conceding that the Defendant's excuse for failing to supplement is valid. In fact, I seriously doubt that it. But that is another motion all to itself. I am merely showing how, even if the Defendant is telling the truth, they are still liable to me because they still engaged in additional adverse actions which proximately caused my injury.

45.     Remember that the injury I am seeking to recover is not that I *lost* the appeal, per se. The injury I suffered is that the appeal is forever in stasis. There can be no final ruling on the appeal – for better or worse – because of the Defendants' failure to supplement the record or clear up any confusions.

46.     I have alleged not one, not two, but three adverse actions against two defendants. No one adverse action is singlehandedly responsible for causing this injury; it was all three adverse actions, acting in tandem, that collectively caused me this injury. The other two would not have mattered, were it not for the third. As such, all three adverse actions should be considered jointly responsible for the injury. A finding that any one of them was retaliatory should singlehandedly be grounds for holding that respective Defendant liable.

### V.     Causal Connection

47.     On a final note, the Defendant claims that the Complaint "fails to allege any retaliatory motive or intent." This is a bald faced lie.

48.     It is at this point that I must make the most urgent reminder of the limitations on the Court's power. This Court cannot – I repeat, *cannot* – raise new claims or defenses *sua sponte*. See ¶ 1(b)-(c) of this Response. This is most important in this section, because it is at this point that I fear the Defendants are most hopeful that you will meet them in the middle and come up with a better defense than what they have provided. But the Court cannot do that; the Court is stuck considering only the patently frivolous claims that are actually before it.

49.     The Defendants are not contesting the *sufficiency* of the factual allegations which establish causal connection. They are not conceding that I have made allegations of their previous retaliatory actions, but then saying that this is insufficient evidence to conclude that this one particular adverse action was motivated by retaliatory animus. Instead, they are claiming that

there are no factual allegations at all. Period. Nothing to find insufficient.

50.   They are only contesting the *existence* of my factual allegations. Therefore, because of the precedent listed in ¶ 1(b) of this Response, the *existence* of the factual allegations is all the Court can consider. If the factual allegations are there, then the Motion to Dismiss is without merit, no matter how "insufficient" they may be.

51.   So that begs the question ... have I made any allegations – any whatsoever – to show that Boone County has any sort of vendetta against me because of my litigation history? The answer is, unquestionably, yes.

52.   ¶¶ 21-27 clearly illustrate a multi-year pattern of constant abuse, torment, and harassment from state and local government officials. The Court has already determined that these allegations are sufficient to create a finding of retaliatory animus; this is evidenced by the fact that the Court granted my application for leave to proceed in forma pauperis; see Doc. 4. The Court could not do that if it believed my Complaint to not state a claim upon which relief can be granted. See 28 USC § 1915(e)(2)(B).

53.   To repeat, the Defendant is not contesting the sufficiency of the allegations, only whether or not they exist. Therefore, the Court is in no position to re-evaluate its finding that my factual allegations are sufficient; see ¶1(b)-(c) of this Response. The Defendant's grounds for dismissal, as written, are patently frivolous.

## CONCLUSION

54.   As you can see, everything in the Defendant's Motion to Dismiss is patently frivolous. A Motion for Sanctions will be accompanying this Answer.

Wherefore, premises considered, I respectfully request that the motion for Sanctions be denied, costs incurred be awarded, and any other relief to which I may be entitled.

So requested on this, the 16th day of February, 2017.

*David Stebbins*
David Stebbins
123 W. Ridge St.,
APT D
Harrison AR 72601
870-204-6516
stebbinsd@yahoo.com