**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

FEB 21 2017

JAMES W. McCORMACK, CLERK
By:_____
CLERK

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

DAVID A. STEBBINS                                                    PLAINTIFF

VS.                              CASE NO. 4:16-cv00878-BSM

STATE OF ARKANSAS AND
BOONE COUNTY CIRCUIT CLERK                              DEFENDANT

## MOTION FOR SUMMARY JUDGMENT

Comes now, *pro se* Plaintiff David A. Stebbins, who hereby submits the following Motion

for Summary Judgment in the above-styled action.

1.      Before getting to the motion itself, I would like to remind this Court of two very

important limitations on its power:

(a)      First, this court cannot issue a ruling for any motion without giving any explanation

behind its ruling. Even when the Court's actions are discretionary (which they are not in a

Motion for Summary Judgment), to issue a ruling without an explanation is an automatic

abuse of discretion.

i.      See US v. Burrell, 622 F. 3d 961, 964 (8th Cir. 2010) ("We have held that a

district court need not give lengthy explanations … but this does not permit a district

court to give no explanation for its decision"); see also Rayes v. Johnson, 969 F. 2d 700,

704-705 (8th Cir. 1992) ("The district court may have had reason to deny Rayes' request

for subsequent counsel, but no explanation appears in the record. The request was

summarily denied twice").

ii.      See also Slaughter v. City of Maplewood, 731 F. 2d 587, 589 (8th Cir. 1984) ("we

neverthe-less find it necessary to remand because we cannot determine from the record

whether the district court exercised a reasoned and well-informed discretion, so as to

permit our review for abuse of discretion")

iii.    See also Foman v. Davis, 371 US 178, 182 (1962) ("[O]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules").

iv.    See also Gulf Oil Co. v. Bernard, 452 US 89, 103 (1981) ("We conclude that the imposition of the order was an abuse of discretion. The record reveals no grounds on which the District Court could have determined that it was necessary or appropriate to impose this order").

v.    See also US v. Walters, 643 F. 3d 1077, 1080 (8th Cir. 2011) ("given the lack of specific findings and the evidence in the record, we find that the district court abused its discretion").

vi.    See also Jarrett v. ERC Properties, Inc., 211 F. 3d 1078, 1084 (8th Cir. 2000) ("The district court's good faith finding was stated in conclusory fashion with no explanation ... Therefore, the court abused its discretion").

vii.    See also Thongvanh v. Thalacker, 17 F. 3d 256, 260 (8th Cir. 1994) ("A careful review of the record reveals no explanation whatsoever for the reduction. Accordingly, the jury award of $4,000 is restored.").

viii.    See also Purcell v. Gonzalez, 549 US 1, 8 (2006) ("There has been no explanation given by the Court ... we vacate the order of the Court of Appeals")

ix.    See also Press-Enterprise Co. v. Superior Court of Cal., Riverside Cty., 464 US 501, 513 (1984) ("Thus not only was there a failure to articulate findings with the requisite specificity but there was also a failure to consider alternatives to closure and to

total suppression of the transcript. The trial judge should seal only such parts of the transcript as necessary to preserve the anonymity of the individuals sought to be protected.").

x.      See also United States v. Grinnell Corp., 384 US 563, 579 (1966) ("The District Court gave no explanation for its refusal to grant this relief. It is so important and customary a provision that the District Court should reconsider it").

xi.     See also Delaware v. Van Arsdall, 475 US 673, 680 (1986) ("In so doing, it offered no explanation why the Chapman harmless-error standard … is inapplicable here.")

(b)     Second, this court cannot raise any defenses on the Defendant's behalf, sua sponte, unless it pertains to the Court's subject-matter jurisdiction.

i.      See Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011) (""Under [the adversarial system], courts are generally limited to addressing the claims and arguments advanced by the parties. Courts do not usually raise claims or arguments on their own")

ii.     See also Sanchez-Llamas v. Oregon, 548 US 331, 356-57 (2006) ("The consequence of failing to raise a claim for adjudication at the proper time is generally forfeiture of that claim. As a result, rules such as procedural default routinely deny 'legal significance' … to otherwise viable legal claims")

iii.    See also Sayre v. Musicland Group, Inc., 850 F. 2d 350, 353 (8th Cir. 1988) (failure to plead affirmative defenses constitutes waiver of that defense, even if not specifically listed in Rule 8(c)).

iv.     See also Sartin v. Commissioner of Pub. Saf. of St. of Minn., 535 F. 2d 430, 433 (8th Cir. 1976) (same).

(c)      As such, whatever defenses the Defendants raised in their responsive pleading are the

defenses they are stuck with. This Court cannot "bail out" the Defendants by raising defenses

the Court believes to be meritorious but that the Defendants "forgot" to raise. This Court

must restrict its consideration to the claims raised in the Complaint and the defenses raised in

the Answer … and absolutely nothing else!

2.      With that established`

3.      , the Defendants have filed a Motion to Dismiss. This normally would delay the

proceedings until that Motion was ruled on, thus making a motion such as this premature.

However, in an extremely rare occurrence, they have also decided to file an Answer. They did

not have to, but they did. As such, I will assume that this motion is timely.

4.      That said, on with the motion itself:

5.      The facts are not in genuine dispute, at least as they concern the Boone County Circuit

Clerk. The Court can take judicial notice of my statutorily protected activities and the

Defendants' adverse actions. The Defendants have such a long and illustrious history of

discriminating against me on account of my statutorily protected activities that the causal

connection should be presumed in the absence of any objective evidence to the contrary. The

damages I have suffered are also judicially noticeable, and therefore are not in dispute either.

6.      I am entitled to judgment as a matter of law. The law clearly forbids the Defendants from

using my statutorily protected activity as a factor in any of their decisions, and yet, that is clearly

what happened.

7.      Please find, attached to this motion, the following exhibits:

- **Exhibit A** – Complaint filed by me in the Boone County Circuit Court on April 10, 2012

  to be referred to, from here on out, as "the state case" for ease of reference).

- **Exhibit B** – Order from the Arkansas Supreme Court assigning Russel Rogers to judge the state case.

- **Exhibit C** – the first official order entered by Russel Rogers in the state case, which is supposedly dated January 23, 2015.

- **Exhibit D** – The Plaintiff's Notice of Appeal in the state case.

- **Exhibit E** – An order from the Arkansas Court of Appeals, dated September 7, 2016.

- **Exhibit F** – A printout of the Case Summary in Case No. CV-16-16 in the Arkansas Court of Appeals, accurate as of the time of this writing.

- **Exhibit G** – An order from Russel Rogers dated June 3, 2015, where he openly admits that he does not like me and was ruling against me primarily for that reason.

- **Exhibit H** – An order from Russel Rogers dated July 6, 2015 where he once again reaffirms his hatred of me, and was denying me justice *exclusively* (not just primarily) for that reason alone.

- **Exhibit I** – A letter, claiming to be from the Defendant in the state case, threatening to conspire with local government officials to deny me access to the courts.

- **Exhibit J** – A portion of a transcript from an April 2, 2015 jury trial where a local Harrison attorney admitted that he, not the Defendant in the state case, was the one who wrote the letter that is Exhibit I.

- **Exhibit K** – A portion of a transcript from a motions hearing in a now-closed criminal case where the state's legal agent argued that I should be kept in pre-trial incarceration in part because of my "past [litigation] history."

- **Exhibit L** – A transcript from a motions hearing in the same criminal case where prosecuting attorney Wes Bradford attempted to make the judge dislike me solely on

account of my litigation history.

- **Exhibit M** – A transcript from another motions hearing in that same criminal proceeding where Bradford once again expressed his desire to see me persecuted on account of my litigation history.

- **Exhibit N** – A plea offer from Bradford in the same criminal proceeding, where he made my waiver of my right to court access *quid pro quo* conditional upon me avoiding prison time.

- **Exhibit O** – Another portion of the same transcript as Exhibit K, where my defense attorney in the criminal case admitted that, in her expert legal opinion, Bradford was acting with malice and vindictiveness against me for my litigation practices.

- **Exhibit P** – Another portion of the same transcript as Exhibit K, showing a former jail guard admitting that he felt completely traumatized by the fact that I had sued his small business.

- **Exhibit Q** – A recommendation from a licensed psychological examiner who works for the Arkansas Rehabilitation Services, recommending that the ARS discriminates against me partly on account of my litigation practices.

- **Exhibit R** – Another portion from the same transcript as Exhibit K, showing that I changed my request for damages during the trial.

- **Exhibit S** – Another portion from the same transcript as Exhibit K, showing an attempt by the defendant in that case to convince the jury that I am delusional.

- **Exhibit T** - Another portion from the same transcript as Exhibit K, showing further by the defendant in that case to convince the jury that I am delusional.

- **Exhibit U** - Another portion from the same transcript as Exhibit K, where the counsel and

judge of the State Case explained – while in direct earshot of the Clerk – that an order was indeed entered in January 2015.

- **Exhibit V** - Another portion from the same transcript as Exhibit K, showing the parties, with the Clerk listening in, that there was supposed to be an order filed January 23, 2015.

- **Exhibit W** – A medical definition of delusion.

- **Exhibit X** – Another medical definition of delusion, for the sake of redundancy in order to make sure we've got the definition correct.

8.      A Brief in support of this motion is also being filed alongside this motion, the contents of which are hereby incorporated by reference.

9.      During the brief, the following statutes and case law will be referenced. The Court may wish to have them on standby when reviewing this Motion.

- Federal Rule of Civil Procedure 56.

- Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 US 574 (1986)

- Amir v. St. Louis University, 184 F. 3d 1017 (8th Cir. 1999)

- 29 U.S.C. § 794(a)

- 42 USC § 12132

- 42 USC § 12203

- Grebin v. Sioux Falls Independent School Dist., 779 F. 2d 18, 20 (8th Cir. 1985)

- Shaver v. Independent Stave Co., 350 F. 3d 716, 724 (8th Cir. 2003)

10.     Therefore, I request that the Defendants be declared liable to me for summary judgment for the tort of ADA retaliation.

11.     Upon making this finding, I ask that the Court issue an injunction to the Defendants to never again discriminate or retaliate against me. This should prohibit any circumstance where my

disabilities and/or statutorily protected activities were even so much as a contributing factor in any of their actions or omissions.

12.     I also ask the Court to order the Defendants to pay me compensatory damages for the entire value of the state court civil judgment that the Defendants' actions are preventing me from obtaining. In the "Complaint and Jury Demand" in this case, I stated that this judgment was $11,000,000. However, Fed.R.Civ.P. 56(c) allows me to recover whatever damages I may or may not be entitled to, regardless of what was demanded in the pleadings, as long as it is not a default judgment. As such, I request compensatory damages of $16,173,000, rather than $11,000,000.

13.     I also request postjudgment interest, starting from October 7, 2016, at the rate of 10% per annum. That means that I request postjudgment interest of $4,430.96 per day, starting from October 7, 2016, and continuing until the judgment is paid in full.

14.     Wherefore, premises considered, I respectfully request that the Court issue summary judgment in my favor, grant all the relief requested in Paragraphs 7 & 8 of this Motion, award costs incurred, and any other relief the Court finds appropriate.

So requested on this, the 16th day of February, 2017.

David Stebbins
123 W. Ridge St.,
ATP D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com

IN THE CIRCUIT COURT OF BOONE COUNTY, ARKANSAS
CIVIL DIVISION

DAVID A. STEBBINS                                                   PLAINTIFF

VS                              CASE NO. CV 2012-85-4

DAVID D. STEBBINS                                                   DEFENDANT

### COMPLAINT

Comes now, *pro se* Plaintiff David A. Stebbins ("Plaintiff"), who hereby submits the
following complaint against David D. Stebbins ("Defendant") for the torts of malicious pros-
ecution, abuse of process, defamation, breach of contract, conversion, and battery.

In September of 2011, Plaintiff and Defendant entered into a written contract allowing
Plaintiff to live at Defendant's residence on a week-by-week basis ("the contract"). In essence,
Plaintiff and Defendant had a roommate-style lease agreement. This contract entitled Plaintiff to
full access to all of the home's amenities, including, but not limited to, "full Internet access when
[Defendant and his wife] were not using it" in the contract's exact words. The contract was to
remain in effect until Plaintiff was able to purchase a motor vehicle that his Class D driver's
license would allow him to operate, and also secure living arrangements. Defendant was
supposed to furnish 100% of Plaintiff living expenses – including food – until Plaintiff could
secure those items.

On the night of November 24, 2012, Plaintiff complained that the Internet was slower
than normal, and thus, Plaintiff was not receiving "full Internet access" as the contract called for.
After Defendant made a single, ineffective attempt to repair the Internet speed, Plaintiff contin-
ued to complain, and Defendant reacted by removing the Internet router altogether.

When Plaintiff went into Defendant's bedroom in an attempt to retrieve the router, Defen-
dant jumped out of his bed and punched Plaintiff in the eye. When Plaintiff informed Defendant

37                                    *Exh. A*

that he would go to jail for what he did, Plaintiff went to find a phone book so as to look up the phone number for the Boone County Sheriff's Department. Defendant then proceeded to take a knife from the kitchen to and cut himself across the face.

At first, Plaintiff did not think anything of Defendant's actions; Plaintiff's mindset was that Defendant wished to cut himself, that was his business. Plaintiff put two and two together when he entered the dining room to retrieve the phone so that he could call the police, and saw Defendant in the kitchen wiping the blade off with water so as to remove his fingerprints. At that point, Plaintiff still called the police and reported the punch, but also told the police that Defendant had cut himself to make it look as if the punch was in self-defense.

Approximately fifteen minutes later, two deputies arrived in response to Plaintiff's call. The first one dispatched was David Upton. The second one dispatched was Jason Bearthky, who was not even the first one dispatched, yet responded anyway, even though Upton was perfectly capable of handling the call himself, because Bearthky is good friends with Defendant. In an act of nepotism, Bearthky arrested Plaintiff, but not Defendant, simply because Bearthky "believed" his buddy that Plaintiff attacked Defendant with a knife. Plaintiff was subsequently charged with domestic battery in the second degree in this very Court. Judge Gordon Webb currently presides over the felony charge, the case number of which is CR2011-324.

Plaintiff also spent one hundred thirteen days in the Boone County Detention Center before saving up enough SSI benefits to be able to bond out of jail.

After bonding out of jail, Plaintiff was able to secure living arrangements providing every utility except telephone for $400 per month. Telephone and Internet access were provided by Cox Communications for $40.02 per month, including sales taxes. Plaintiff was also able to secure food stamp benefits of $200 per month, making the deprivation of food a matter of no-

*38*

harm-no-foul.

Defendant's taking of the Internet router constitutes a breach of contract, because the contract entered into in September 2011 specifically entitled Plaintiff to "full Internet access," which Defendant deprived Plaintiff of. It also constitutes conversion, as Plaintiff may not "own" the router, but the contract gave him an ownership interest which Defendant acted adversely to.

Defendant committed battery when he punched Plaintiff in the eye.

Defendant's actions constitute malicious prosecution because he knew I was innocent and pressed charges anyway. First of all, Plaintiff did not use a knife; second, even if he did, Defendant's taking of the router constitutes the tort of conversion, and thus the crime of theft. Therefore, even if Plaintiff used a knife in attempting to recover the router, Plaintiff still would have been justified in his use of non-lethal physical force (which is all Plaintiff is being accused of using, because he is only being charged with domestic battery of the *second* degree, not first) by way of A.C.A. § 5-2-609. Note that, under that statute, I only have to *reasonably* believe that the alleged victim's actions constitute stealing.

Defendant's actions constitute defamation because he lied about my status of attacking him with a knife. This not only led to Plaintiff's undeserved arrest, but also caused Plaintiff to fall out of favor with his own mother.

Finally, The pressing of criminal charges also constitute an abuse of process. Defendant wanted me to move out of his house, but because of the written contract, he could not simply throw me out of the house at a moment's notice. The contract would force Defendant to evict me by way of an unlawful detainer lawsuit. Such an action would have cost a lot of money, it would have taken a long time, and Plaintiff would still be allowed to live at the house in the meantime. Defendant knew this, even if he would not have admitted it, and so he used these criminal

proceedings to force Plaintiff to move out without due process to the Plaintiff. His self-inflicted lacerations caused him to not be arrested; he could have declined to press charges against Plaintiff, and that goal would still have been accomplished. Plaintiff hereby accuses Defendant of actually pressing the charges in an attempt to expedite the eviction process.

Plaintiff respectfully requests that the Court grant him the following relief:

1. An injunction ordering Defendant to cease and desist his defamatory actions.

2. Actual damages totaling $1,000,000, composed of the following:

   A) $2,500 for the cost of purchasing a motor vehicle, which Defendant's actions prevented Plaintiff from being able to save up and afford.

   B) $2,640.12 for the cost of Plaintiff's living arrangements which Plaintiff suffered as a result of Defendant's breach of contract and abuse of process. Plaintiff secured living arrangements with all utilities except phone covered by the landlord, for $400 per month, and telephone and Internet for $40.02 per month. Plaintiff makes the reasonable estimate of six (6) months that it would have otherwise taken him to save up the money to secure these things, had Defendant not breached the contract. Therefore, the math equation yielding these damages is $440.02 x 6 = $2,640.12.

   C) $1,190, because that is the amount it cost me to be able to bond out of jail.

   D) $1,000 for every day Plaintiff was incarcerated because of Defendant's defamation and malicious prosecution, for the injury of loss of enjoyment of life. Since Plaintiff was incarcerated for 113 days, he seeks damages for this injury totaling $113,000.

   E) $4,859.88 in pain damages for punching Plaintiff.

   F) $25,810 for the emotional distress which Defendant caused Plaintiff.

   G) $50,000 in damages for the loss of reputation within the community, and

40

H) $800,000 in damages for the loss of Plaintiff's reputation with his mother.

3. Ten times the compensatory damages, or $10,000,000, in punitive damages, because Defendant acted with malicious indifference to my legal rights. The breach of contract action does not allow for the recovery of punitive damages as a matter of public policy, but everything else does. This makes for a grand total of $11,000,000 in damages.

Wherefore, premises considered, Plaintiff respectfully request that this relief be granted.

David Stebbins
123 W. Ridge,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com

41

# SUPREME COURT OF ARKANSAS
### No. 14-402

| | | |
|---|---|---|
| **DAVID A. STEBBINS** | | Order Delivered October 7, 2014 |
| | **PLAINTIFF** | |
| | | **MOTION FOR ASSIGNMENT OF** |
| **VS.** | | **JUDGE, FOURTEENTH JUDICIAL** |
| | | **CIRCUIT, BOONE COUNTY,** |
| **DAVID D. STEBBINS** | | **ARKANSAS** |
| | **DEFENDANT** | **CASE NO. CV 2012-085-4** |
| | | |
| | | **GRANTED.** |

# ORDER

Under the authority vested in the Chief Justice of the Supreme Court of Arkansas by

Act 496 of 1965 as amended, and Ark. Const. Amend. 80, and in response to the written

request of Hon. Gordon Webb, Judge Russell Rogers, Retired, is hereby assigned to the 14th

Judicial Circuit to hear the following case:

> *David A. Stebbins v. David D. Stebbins*
> Boone County Circuit Court Case No. CV 2012-085-4

This assignment includes all ancillary proceedings which may arise in connection with

said cause, and proceedings subsequent thereto shall be held at such time or times as shall be

directed and ordered by Judge Rogers.

This order made and entered this 7th day of October, 2014.

**FILED**

OCT 0 7 2014

**STACEY PECTOL CLERK**

Chief Justice

*Exh. B*

**Russell Rogers**
*Circuit Judge*
*Retired on Assignment*
*P.O. Box 365*
*602 South College*
*Stuttgart, AR 72160*

Phone: (870) 673-1162

Fax: (870) 673-2480

---

January 23, 2015

Mr. Jim Goldie                                    *via fax and mail*
P.O. Box 5595
Harrison, AR  72602
Fax #:870-741-6897

Mr. David A. Stebbins
123 W. Ridge St., Apt. D
Harrison, AR  72601

　　　　　Re:　　*David A. Stebbins v. David D. Stebbins*
　　　　　　　　*Boone County Circuit Court, Civil Division*
　　　　　　　　*Case No. CV-2012-85-4*

Gentlemen:

　　　　After a long study, the issues in this case appear to be basically simple:

　　　　1.  Was there a contract between the parties? If so, has it been breached; by whom; and if there was a breach, was there any damage?
　　　　2.  Has there been a battery committed and if so, what are the damages?

　　　　The following motions are hereby ruled upon or reserved:

　　　　1.　　Motion to "Always read the Law…." filed October 23, 2013 is apparently directed to Judge Webb who is no longer in the case.  It is therefore dismissed as moot.
　　　　2.　　Motion to Clarify filed November 6, 2014: The Court's letter and general admonitions were to both parties, and would apply in any case. All pleadings should express facts and law and refrain from snide comments.
　　　　3.　　Motion for Contempt and for Sanctions filed April 15, 2014:  Whether the motions were dismissed with or without prejudice is not relevant as if they were dismissed they are not before the Court.

*Exh. C*

4.    Plaintiff's Revised Motion for Partial Judgment on the Pleadings or in the alternative for Partial Summary Judgment is denied as it presumes facts to not be in dispute that actually are in dispute, and/or makes incorrect legal conclusions from facts which may or may not be in dispute.

5.    Plaintiff's "Motion to Strike Amended Answer" is deemed withdrawn at Plaintiff's request.

6.    Plaintiff's "Second Renewal of First Motion to Compel Discovery (of October 23, 2013) is denied in that it is confusing at best and is very unlikely to result in any evidence relevant to or admissible in this case.

7.    The Plaintiff's Motion for Protective Order and in Limine is noted. It is denied as a blanket order. Any and all evidence that is sought to be introduced by either party at trial will be subject to the usual tests for admissibility pursuant to the Rules of Civil Procedure.

8.    Defendant's Motion to Strike Amended Complaint is probably moot as Defendant has answered the amended complaint, but I will grant it insofar as the actions of a third party are concerned.

I believe that this resolves the pending motions and I will cancel the hearing set for January 29, 2015. You may contact the Trial Court Assistant for available trial dates and advise whether a jury is still requested.

Yours truly,

Russell Rogers
RR/ldw

cc: Ms. Polly Leimberg, Trial Court Assistant
    P.O. Box 785
    Harrison, AR   72602-0785

15CD3107

IN THE CIRCUIT COURT OF BOONE COUNTY, ARKANSAS
CIVIL DIVISION

DAVID A. STEBBINS                                                    PLAINTIFF

VS                                    CASE NO.2012-85-4

DAVID D. STEBBINS                                                   DEFENDANT

### NOTICE OF APPEAL

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Notice of

Appeal in the above-styled action, of the judgment entered in the above-styled action pursuant to

jury verdict.

### Rule 3(e) Compliance

This appeal is being taken to the Arkansas Court of Appeals. Plaintiff has ordered a copy

of the transcript for the jury trial. Since Plaintiff is proceeding in forma pauperis, there are no

financial obligations to meet.

Plaintiff has a "Second Motion for New Trial and to Recuse" pending. This motion is

NOT being abandoned. Rather, pursuant to his rights under Rule 4(b)(2) of the Arkansas Rules

of Appellate Procedure – Civil[1], this Motion is being filed, just in case the Second Motion for

New Trial gets denied. If the motion is granted, Plaintiff will file an Amended Notice of Appeal

as appropriate[2].

Other than that, however, the jury verdict being appealed disposed of the contract and

battery claims, but Plaintiff is also appealing the Circuit Court's *sua sponte* dismissal of all other

claims. Therefore, with the exception of the Second Motion for New Trial and to Recuse, there

---

[1]  "A notice of appeal filed before disposition of any of the motions listed in paragraph (1) of this subdivision shall
be treated as filed on the day after the entry of an order disposing of the last motion outstanding or the day after
the motion is deemed denied by operation of law. Such a notice is effective to appeal the underlying judgment,
decree, or order."

[2]  Supra, "A party who also seeks to appeal from the grant or denial of the motion shall within thirty (30) days
amend the previously filed notice, complying with Rule 3(e)."

1251                              *Exh. D*

is nothing to abandon.

### Contents of the Record

It is unclear what it means to "designate the record on appeal," but based on Plaintiff's research, he thinks he has an idea. Please be forgiving if this is inaccurate, because Plaintiff only has what he has researched online to go off of.

Out of an abundance of caution, Plaintiff believes that certified copies of the entire docket will be needed for this appeal. He also believes that transcripts of every motions hearing, as well as the jury trial in this case, will be needed.

Plaintiff highly doubts that every single page will be needed, but it is better safe than sorry.

As a result of a combination of Ark.R.Civ.P. 72 and A.C.A. § 16-13-506(b)[3], Plaintiff should not have to pay for any of this.

### Reversible Errors

The Circuit Court committed the following reversible errors:

1. Special Judge Russel Rogers committed reversible error when he denied Plaintiff's Motion to Recuse, despite having admitted, himself, to holding a bias against Plaintiff and to engaging in *ex parte* communications with the Defense Counsel through the Court's secretary.

2. The jury verdict was against the clear preponderance of the evidence.

3. The Circuit Court acted outside its jurisdiction by dismissing, without grounds, all but two causes of action that were properly filed and before the court, including, but not

---

3 This statute entitles an "*in forma pauperis*" Plaintiff to "an original and two (2) copies" of every transcript without costs. Thus far, Plaintiff has received originals of every transcript up to, but not including, the jury trial. Thus, he should still have two (2) copies of every transcript to exhaust. After this, he will have one (1) copy remaining under the IFP order. With the jury trial, he still has not even exhausted his original, let alone the two (2) copies.

1252

limited to, abuse of process, malicious prosecution, and defamation.

4. The Circuit Court erred in denying Plaintiff's Motion for Summary Judgment.

5. During trial, the Circuit Court abused its discretion when it prohibited the Plaintiff from introducing evidence of the Defendant's prior actions, which was admissible under Ark. R. Evid. 404(b).

6. The Circuit Court committed reversible error when it ruled that two of the Defendant's written confessions, threatening to participate in a conspiracy to have Plaintiff arrested in an attempt to deprive Plaintiff of access to the courts was "not relevant."

7. The Circuit Court committed reversible error when it allowed the Defense Attorney – without calling any witness, presenting evidence, or even going under oath himself – to offer counter-arguments to the Plaintiff's evidence, despite the Court's jury instruction (which was even offered by the Defendant himself) said that the jury was not allowed to consider extra-testimonial statements made by the attorneys.

8. The Court abused his discretion in allowing the defense to admit inadmissible hearsay evidence against Plaintiff.

9. The Circuit Court abused its discretion when it stated that normally admissible hearsay requires a transcript to be admissible, even when no transcript is possible.

10. The Circuit Court abused its discretion in not allowing Plaintiff to introduce admissible hearsay evidence.

11. The Circuit Court abused its discretion when it refused to grant Plaintiff's mid-trial Motion for Declaratory Relief.

12. The Circuit Court abused its discretion in refusing to issue a warrant to collect a witness who had not appeared for trial, despite never moving to quash.

13. The Circuit Court abused its discretion in granting a Motion to Quash before Plaintiff had even been served with a copy thereof, let alone had enough time to respond, simply because that witness CLAIMED to lack knowledge of any malicious prosecution.

14. The Circuit Court abused its discretion by refusing to admit evidence that the Defense never suggested was not admissible, simply on the grounds that the Defense Attorney (who was not even sworn in and thus ineligible to give testimony) affirmed to the Court that the evidence did not actually incriminate him or his client. Plaintiff's right to a fair trail was unfairly prejudiced when Plaintiff was not allowed to give rebuttal evidence to the Defense Attorneys self-serving statements.

15. The Circuit Court abused its discretion when it denied Plaintiff's motion for a mistrial when the Defense Attorney consistently attempted to interrupt Plaintiff's testimony, not because Plaintiff's evidence was inadmissible, but rather, to insert what he believed Plaintiff's testimony should be, effectively usurping the position of "Counsel for Plaintiff." This happened on at least three different occasions, depriving Plaintiff of his right to devise his own litigation strategies and present his own evidence.

16. The Circuit Court erred in denying Plaintiff's First, Second, and Third Motions for Directed Verdict made during the trial, after the Defense rested.

17. The Circuit Court abused it discretion when it refused to give any instruction to the jury on the proper standard of "impossibility" as a defense to a contract obligation.

18. The Circuit Court abused its discretion when it rejected ALL of the Plaintiff's proposed jury instructions on the grounds that SOME of the proposed instructions "commented on the evidence," while at the same time adopting, verbatim, the Defendant's proposed instructions, even though some of them "commented on the evidence" as well.

19. The Circuit Court abused its discretion in refusing to admit evidence of two instances where the Defendant issued written threats to engage in a conspiracy to have Plaintiff arrested.

20. The Circuit Court abused its discretion in arbitrarily blocking Plaintiff from producing all the evidence he had that his arrest was made pursuant to a conspiracy, for no other reason than, he was just tired.

21. The court abused its discretion in denying the Plaintiff's Motion in Limine when the Defendant, during trial, admitted to battering Plaintiff, but raised for the first time in the entire case, the affirmative defense of self-defense, in complete disregard to Plaintiff's discovery rights.

22. The Circuit Court abused its discretion when it refused to allow Plaintiff to give his own answers to cross examination questions, while at the same time refusing to permit the Plaintiff to demand straight answers from his own hostile witnesses (both on cross-examination, and directly examining the hostile witnesses).

23. The Circuit Court committed reversible error when it ruled the Defense Counselor's written statements and admissions as inadmissible to incriminate and/or discredit the Defendant, even though it is black letter law that statements made in a representative capacity are just as probative as statements made in a personal capacity, and that a client is held responsible for the actions of his freely and voluntarily retained counsel.

24. The Circuit Court abused its discretion when it denied Plaintiff's Motion to Compel Discovery, cutting Plaintiff off from potentially powerful evidence.

25. The Circuit Court erred when it denied Plaintiff's Motion for Writ of Mandamus, as this prevent Plaintiff from obtainin valuable evidence.

1255

26. The Circuit Court erred when it refused to grant Plaintiff's Second Motion to Compel Discovery, even though the requested evidence was clearly admissible under Rule of Evidence 404(b).

27. The Circuit Court abused its discretion in refusing to entertain any Motions in Limine, instead opting to make all admissibility determinations during trial, right in front of the jury (the very people who's ignorance of the inadmissible evidence is the very point of having a motion in limine).

28. The Circuit Court abused its discretion on numerous occasions when it denied (both affirmatively, and implicitly in its failure to rule on the motions) Plaintiff's numerous Motions for Sanctions and Motions for Contempt.

Plaintiff reserves the right to brief an issue on appeal, even if not expressly raised in this Notice.

Plaintiff will need a copy of the trial transcript for a majority of the points of appeal listed in this Notice.

So notified on this, the 30th day of June, 2015.

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com

1256

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-16-16

| | | |
|---|---|---|
| | | Opinion Delivered:  SEPTEMBER 7, 2016 |
| DAVID A. STEBBINS | APPELLANT | APPEAL FROM THE BOONE COUNTY CIRCUIT COURT [NO. CV-12-85] |
| V. | | HONORABLE RUSSELL ROGERS, SPECIAL JUDGE |
| DAVID D. STEBBINS | APPELLEE | REMANDED TO SETTLE AND SUPPLEMENT THE RECORD; REBRIEFING ORDERED |

## KENNETH S. HIXSON, Judge

The parties to this appeal are appellant David A. Stebbins and his father, appellee David D. Stebbins. At the time of the incident giving rise to this litigation, the son was residing with the father. In an attempt to eliminate or reduce previous friction between the parties, the parties had executed a written agreement setting forth the terms and conditions whereby the son could live in the father's residence. On November 24, 2011, the police were called to the home of the father David D. Stebbins and found that the father had suffered knife wounds to his face. The son, David A. Stebbins, was arrested and charged with battery. The son subsequently filed suit against his father claiming that his father had breached the written contract between the parties that night by failing to provide adequate high-speed internet service. Appellant further claimed that, after he confronted his father about the problem with the internet, his father punched him in the face, and then the father



purposely cut his own face with a knife to make it appear as if he had been attacked by his son. Appellant asserted in his complaint that his father pressed criminal charges against him knowing them to be false, and used the alleged attack as a means to circumvent the lease-agreement provision of the parties' contract and unlawfully evict appellant from his house. The complaint alleged six separate causes of action, including malicious prosecution, abuse of process, defamation, breach of contract, conversion, and battery. Appellant subsequently filed an amended complaint, adding additional claims for identity theft, tort of outrage, negligence, and forgery.

The case was tried to a jury, and the jury's verdicts were returned in favor of the father David D. Stebbins. Thereafter, the trial court entered a judgment dismissing appellant's complaint with prejudice. David A. Stebbins filed a motion for a new trial and subsequently filed a second motion for new trial, which were both denied by the trial court. David A. Stebbins now appeals from the underlying judgment and the order denying his second motion for new trial.

On appeal, the son David A. Stebbins raises twenty-nine arguments for reversal. Because David A. Stebbins' addendum contains a document not contained in the record, we remand to settle the record to include that document if it exists. Specifically, we direct that the record be settled and supplemented with a letter from the trial judge to the parties dated January 23, 2015, a copy of which is contained in appellant's addendum at pages

190–91.[1]  Moreover, because David A. Stebbins has submitted a brief with a significantly deficient addendum and abstract, we also order rebriefing.

Rule 4-2(a)(8) of the Arkansas Supreme Court Rules provides that the addendum contained in the brief must contain all documents in the record that are essential for the appellate court to confirm its jurisdiction, to understand the case, and to decide the issues on appeal.  Rule 4-2(a)(8)(A)(i) specifically provides that the addendum must include the jury's verdict forms and the order being appealed.  Appellant's addendum does not include the jury's verdict forms (interrogatories No. 1 through No. 4), nor does it include the trial court's order denying appellant's second motion for new trial, from which appellant has appealed.  Additionally, we observe that one of appellant's arguments challenges the trial court's denial of his proposed jury instructions.  While appellant did include in his addendum the instructions he proposed, he failed to include the jury instructions actually given by the trial court, and these jury instructions are also essential to our review of the case.  Finally, we note that appellant's case rests in large part on the alleged breach of the parties' written contract, but there is no legible copy of the contract in the addendum.  On rebriefing, we order appellant to include in the addendum each of the omitted documents identified above.

We further conclude that appellant's abstract is in flagrant violation of Rule 4-2(a)(5)(B), which provides that the abstract "shall be an impartial condensation, without comment or emphasis, of the transcript."  The appellant's abstract is inaccurate and misleading in numerous respects.  For example, the abstract contains witness testimony

---

[1] Pursuant to Ark. R. App. P.–Civ. 6(e), if anything material to either party is omitted from the record by error or accident, we may direct that the omission be corrected, and if necessary, that a supplemental record be certified and transmitted.

which, when compared to the actual record, has been partially fabricated. Additionally, the abstract contains numerous statements attributed to the trial judge that appear to have been manufactured by the appellant out of whole cloth. Appellant misquotes the judge as calling him a "punk" on multiple occasions, further misquotes the judge as stating that he had no regard for the law and was making his rulings based on his like for the defense and dislike for the appellant, and at the conclusion of the trial appellant misrepresents the trial judge as proclaiming that he was God and was incapable of making mistakes. These distortions in the abstract will not be tolerated by this court and must be corrected. On rebriefing, we order appellant to submit an accurate and impartial abstract of the material parts of the transcript, consistent with our abstracting rules.

Because of the deficiency in the record, we remand to the trial court to settle and supplement the record with the omitted document (the trial court's January 23, 2015 letter) within thirty days. Pursuant to Arkansas Supreme Court Rule 4-2(b)(3), we order appellant to file a substituted abstract, addendum, and brief within fifteen days from the date that the supplemental record is filed. The materials listed herein are not intended as an exhaustive list of deficiencies, and we encourage appellant to carefully review the rules and ensure that no other deficiencies exist before filing his substituted abstract, addendum, and brief. If appellant fails to cure the deficiencies within the prescribed time, the orders appealed from may be affirmed for noncompliance with the rule. Ark. Sup. Ct. R. 4-2(b)(3). The appellee is allowed fifteen days from the date appellant files his substituted brief in which to respond, if he so chooses.

4

Remanded to settle and supplement the record; rebriefing ordered.

KINARD and WHITEAKER, JJ., agree.

## Report Selection Criteria

**Case ID:**            CV-16-16
**Citation No:**
**Docket Start Date:**
**Docket Ending Date:**

## Case Description

**Case ID:**      CV-16-16 - DAVID A STEBBINS V DAVID D STEBBINS
**Filing Date:** Monday , December 28th, 2015
**Court:**        AR - STATE OF ARKANSAS
**Location:**     CA - COURT OF APPEALS
**Type:**         CA - CIVIL APPEAL CIRCUIT
**Status:**       ACTIVE - ACTIVE
**Images:**

## Case Event Schedule

*No case events were found.*

## Case Parties

| Seq # | Assoc | End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 2 | | | APPELLEE | 14204965 | **STEBBINS, DAVID D.** |
| | | | | **Aliases:** | *none* |
| | | | | | |
| 5 | | | APPELLEE COUNSEL | 10028820 | **GOLDIE, JAMES E** |
| | | | | **Aliases:** | *none* |
| | | | | | |
| 6 | | | WRITING JUDGE | 11225301 | **KENNETH HIXSON, JUDGE** |
| | | | | **Aliases:** | *none* |
| | | | | | |
| 4 | | | LOWER COURT JUDGE | 10801210 | **ROGERS, F RUSSELL** |
| | | | | **Aliases:** | ROGERS, RUSSELL<br>ROGERS, F. RUSSELL |
| | | | | | |
| 1 | | | APPELLANT PRO SE | 14204968 | **STEBBINS, DAVID A.** |
| | | | | **Aliases:** | *none* |

*Exh. F*

| 3 | | | LOWER COURT CLERK | | **BOONE COUNTY CIRCUIT COURT** |
|---|---|---|---|---|---|
| | | | | Aliases: | *none* |
| | | | | | |

**Violations**

**Sentence**

No Sentence Info Found.

**Milestone Tracks**

| MILESTONE DESCRIPTION | DUE DATE | CHANGED DUE DATE | FILING DATE |
|---|---|---|---|
| SUPPLEMENT RECORD ORDERED | 09/07/2016 | | 09/07/2016 |
| SUPPLEMENTAL RECORD LODGED | 10/07/2016 | | |
| REBRIEFING COMMENCED | | | |
| APPELLANT'S REBRIEF | | | |
| APPELLEE'S REBRIEF | | | |

**Docket Entries**

| Filing Date | Description | Name | Monetary |
|---|---|---|---|
| 12/28/2015 08:00 AM | RECORD LODGED $ | | |
| **Entry:** | *none.* | | |
| **Images** | No Images | | |
| | | | |
| 12/28/2015 08:00 AM | BRIEFING COMMENCED | | |
| **Entry:** | *none.* | | |
| **Images** | No Images | | |

| 01/08/2016 11:48 AM | MOTION OTHER | STEBBINS, DAVID A. | |
|---|---|---|---|
| **Entry:** | Appellant's pro se motion to relax copy requirements. Appellant served James Goldie via e-mail on January 6, 2016. | | |
| **Images** | MOTION | | |

| 01/08/2016 11:51 AM | MOTION TO FILE ENLARGED BRIEF | STEBBINS, DAVID A. | |
|---|---|---|---|
| **Entry:** | Appellant's pro se motion for leave to file extra-long argument. Appellant served James Goldie via e-mail on January 6, 2016. | | |
| **Images** | MOTION | | |

| 01/14/2016 01:06 PM | MOTION OTHER | STEBBINS, DAVID A. | |
|---|---|---|---|
| **Entry:** | Appellant's pro se motion for summary reversal and for findings of fact and conclusions of law. Appellant served James Goldie via e-mail on January 12, 2016. | | |
| **Images** | MOTION | | |

| 01/27/2016 09:11 AM | MOTION SUBMITTED | STEBBINS, DAVID A. | |
|---|---|---|---|
| **Entry:** | Appellant's pro se motion to relax copy requirements. | | |
| **Images** | No Images | | |

| 01/27/2016 09:11 AM | MOTION SUBMITTED | STEBBINS, DAVID A. | |
|---|---|---|---|
| **Entry:** | Appellant's pro se motion for summary reversal and for findings of fact and conclusions of law. | | |
| **Images** | No Images | | |

| 01/27/2016 09:12 AM | MOTION SUBMITTED | STEBBINS, DAVID A. | |
|---|---|---|---|
| **Entry:** | Appellant's pro se motion for leave to file extra-long argument. | | |
| **Images** | No Images | | |

| 02/03/2016 09:15 AM | LETTER ORDERS - COA | STEBBINS, DAVID A. | |
|---|---|---|---|

| Entry: | Appellant's pro se motion to relax copy requirements is denied. Appellant's pro se motion for leave to file extra-long argument is denied. Appellant's pro se motion for summary reversal and for findings of fact and conclusions of law is denied. | | |
|---|---|---|---|
| Images | ORDER | | |

| 02/04/2016 09:05 AM | 7 DAY BRIEF EXTENSION | STEBBINS, DAVID A. | |
|---|---|---|---|
| Entry: | Appellant's brief due February 13, 2016. | | |
| Images | No Images | | |

| 02/12/2016 12:19 PM | MOTION EXTENSION OF TIME | STEBBINS, DAVID A. | |
|---|---|---|---|
| Entry: | *none.* | | |
| Images | MOTION | | |

| 02/18/2016 10:03 AM | BRIEF EXTENSION | STEBBINS, DAVID A. | |
|---|---|---|---|
| Entry: | Appellant's brief due March 30, 2016. | | |
| Images | No Images | | |

| 03/02/2016 03:49 PM | APPELLANT'S BRIEF | STEBBINS, DAVID A. | |
|---|---|---|---|
| Entry: | *none.* | | |
| Images | BRIEF | | |

| 03/24/2016 10:17 AM | APPELLEE WILL NOT FILE BRIEF | STEBBINS, DAVID D. | |
|---|---|---|---|
| Entry: | Letter from attorney James E. Goldie on behalf of the appellee. The appellee will not file a brief. | | |
| Images | Letter from appellee attorney | | |

| 08/24/2016 09:18 AM | CASE SUBMITTED | STEBBINS, DAVID A. | |
|---|---|---|---|
| Entry: | *none.* | | |
| Images | No Images | | |

| 09/07/2016 09:01 AM | OPINION - OTHER | KENNETH HIXSON, JUDGE, | |
|---|---|---|---|
| **Entry:** | Remanded to settle and supplement the record; rebriefing ordered. Kinard and Whiteaker, JJ., agree. | | |
| **Images** | Majority opinion | | |
| | | | |

| 09/07/2016 09:01 AM | FORMAL ORDERS - COA | STEBBINS, DAVID A. | |
|---|---|---|---|
| **Entry:** | Remanded to settle and supplement the record; rebriefing ordered. Supplemental record is due in thirty days (October 7, 2016). Appellant's substituted brief is due fifteen days after the filing of the supplemental record. Appellee may file a substituted brief fifteen days thereafter. | | |
| **Images** | Formal Order | | |
| | | | |

| 09/07/2016 09:01 AM | SUPPLEMENT RECORD ORDERED | STEBBINS, DAVID A. | |
|---|---|---|---|
| **Entry:** | Supplemental record is due thirty days (October 7, 2016). | | |
| **Images** | No Images | | |
| | | | |

| 09/07/2016 10:46 AM | OPINION PANEL | | |
|---|---|---|---|
| **Entry:** | *none.* | | |
| **Images** | No Images | | |
| | | | |

| 09/14/2016 01:06 PM | MOTION OTHER | STEBBINS, DAVID A. | |
|---|---|---|---|
| **Entry:** | Pro se appellant's motion for return of original brief. | | |
| **Images** | Pro se motion to return brief | | |
| | | | |

| 09/14/2016 01:06 PM | MOTION FOR CLARIFICATION | STEBBINS, DAVID A. | |
|---|---|---|---|
| **Entry:** | Pro se appellant's motion to clarify order for rebriefing. | | |
| **Images** | Pro se motion to clarify | | |
| | | | |

| 09/28/2016 09:00 AM | MOTION SUBMITTED | STEBBINS, DAVID A. | |
|---|---|---|---|
| **Entry:** | Pro se appellant's motion for return of original brief. | | |
| **Images** | No Images | | |

| 09/28/2016 09:00 AM | MOTION SUBMITTED | STEBBINS, DAVID A. | |
|---|---|---|---|
| **Entry:** | Pro se appellant's motion to clarify order for rebriefing. | | |
| **Images** | No Images | | |

| 10/05/2016 09:00 AM | LETTER ORDERS - COA | STEBBINS, DAVID A. | |
|---|---|---|---|
| **Entry:** | Pro se appellant's motion for return of original brief is denied. Pro se appellant's motion to clarify order for rebriefing is denied. | | |
| **Images** | Letter Order | | |

| 11/29/2016 11:06 AM | BRIEF TENDERED | STEBBINS, DAVID A. | |
|---|---|---|---|
| **Entry:** | Pending Motion to Supplemental Record | | |
| **Images** | No Images | | |

| 12/09/2016 02:11 PM | LETTER FROM ATTORNEY | GOLDIE, JAMES E | |
|---|---|---|---|
| **Entry:** | Letter from attorney James E. Golden stating appellee Stebbins does not intend to file a brief at this time. | | |
| **Images** | LETTER | | |

*Russell Rogers*
*Circuit Judge*
*Retired on Assignment*
*P.O. Box 365*
*602 South College*
*Stuttgart, AR 72160*

Phone: (870) 673-1162
Fax: (870) 673-2460

June 2, 2015

Mr. Jim Goldie
P.O. Box 5595
Harrison, AR  72602

Mr. David A. Stebbins
123 W. Ridge St., Apt. D
Harrison, AR  72601

      Re:   *David A. Stebbins v. David D. Stebbins*
           *Boone County Circuit Court, Civil Division*
           *Case No. CV-2012-85-4*

Gentlemen:

    The following is a letter opinion and ruling as to the post trial motions.

    The plaintiff, David A. Stebbins, has filed a post trial Motion for Judgment NOV or in the Alternative for New Trial.

    The plaintiff exhibits remarkable tenacity in his arguments despite each one containing only a faint glimmer of the truth. He also is rather adept at finding and arguing rules of law which have no application to or basis in the facts of this case.

    As to not giving reasons for granting or denying motions, just as in the past three or four hundred trials I have conducted, the majority of the objections made at this trial were in the form of "objection, hearsay"; "objection, not relevant", "objection, asked and answered", therefore any further explanation would be of little use. As to some objections, I inquired as to the basis and then granted or denied. Some objections were granted or denied without comment, but neither party inquired as to the reason at the time. Only later on the second day of trial did plaintiff ask for an explanation as to the basis of a ruling and it was given.

*Exh. G*

Insofar as I can determine from his motions, the Plaintiff is complaining about the Defendant's attorney representing his client and trying his case in a usual and competent manner.

The question of juror and court reporter fees is one I hope can be reserved and treated as a prayer for an advisory opinion.

Witness and attorney's fees were awarded by the jury. The Defendant's attorney and the witnesses are not county or state employees; therefore pauper's status is no shield against judgment being entered, as requested by the jury.

Mr. Stebbins uses his medical condition, if such truly exists, as a weapon, and reacts to the very edge of a total loss of self control whenever he perceives that anyone might dare disagree with him.

Plaintiff has abused his rights to due process to a degree this court has never before seen. I cannot see any rational basis for his numerous suits. I believe him to be not just a nuisance but, far more importantly, a danger to himself and to others.

Plaintiff's motions are accordingly denied.

Yours truly,

Russell Rogers
RR/klw

**Russell Rogers**

*Circuit Judge*
*Retired on Assignment*
*P.O. Box 365*
*602 South College*
*Stuttgart, AR 72160*

Phone: (870) 673-1162
Fax: (870) 673-2480

July 2, 2015

Mr. Jim Goldie
P.O. Box 1595
Harrison, AR 72602

Mr. David A. Stebbins
123 W. Ridge St., Apt. D
Harrison, AR  72601

FILED FOR RECORD
2015 JUL -6 PM 2:54
RHONDA WATKINS
BOONE CO. CIRCUIT CLERK
DC

     Re:    *David A. Stebbins v. David D. Stebbins*
            *Boone County Circuit Court, Civil Division, Case No. CV-2012-85-4*

Gentlemen:

    The only issues pending before the Court are a second motion for a new trial and

second motion for me to recuse:

    As background, and in summation of the numerous exhibits and attachments:

    1.    Exhibit A is my letter dated June 26, 2015 to the parties regarding ex parte

contacts. The first email referred to is the letter concerning Mr. Stebbins's attempted suicide:

My secretary, in an email transmitting something to Mr. Goldie, referred to Mr. Stebbins

doing "something foolish". She did not tell Mr. Goldie what and he found out on his own

about the suicide attempt. My secretary, who is not a trained trial court assistant, is the

secretary for a three lawyer firm. I send her emails I receive to be printed as I dislike email

1258

*Exh. H*

and cannot write notes on them. She had the opportunity to and did read the document plus I had already told her about it. I did not immediately divulge it to Mr. Goldie and sought an answer as to what to do about it. Mr. Stebbins said it had nothing to do with the instant case but I soon realized that it did as it was Mr. Stebbin's attempt to extort a decision favorable to him. Exhibit B is that email and a draft of a lawsuit Mr. Stebbins said he was going to file (and has since repeated that he would do so) unless I granted his motion for a new trial. This attempted extortion contains, along with numerous ridiculous and libelous statements, Paragraphs 27 and 28 in which he states that after the trial he was so unhappy that he drank a bottle of bleach, was hospitalized and diagnosed with clinical depression.

2.       Mr. Goldie, who did not know that my secretary printed all emails and gave them to me, sent a couple of emails to her about the status of pleadings and two in partial responses to Mr. Stebbins pleadings. I recall the one about preparation of an Order but did not notice that it was not copied to Mr. Stebbins (Exhibit C). Exhibit D, dated May 7th, is about preparing a draft of judgment plus venting a bit about Mr. Stebbin's customary rudeness. I do not recall seeing this one but find nothing in it that is untrue or that has anything to do with the motion for a new trial. Exhibit E is a simple transmittal (May 8th) that was not copied to Mr. Stebbins but notes that the proposed judgment was sent to him by regular mail. Exhibit F of May 11th is one that I do not recall. It was not copied to Mr. Stebbins and contains what I will refer to as an angry response to an email from Mr. Stebbins as is Exhibit G (ten minutes later). I do not recall seeing either of these. I slightly redrafted and signed the judgment (Exhibit H).

1259

3.    Mr. Stebbins sent a motion to set aside the judgment and I denied it (Exhibit I).

4.    Exhibit J is Mr. Stebbins' Second Motion for a new trial and Exhibit K is a collection of paranoid, vulgar, threatening and derogatory emails from Mr. Stebbins regarding that Motion and what all he is going to do if it is not granted. Many of these are quite offensive and disturbing, but I could not however help but chuckle at his statement that the delay of the emails were "damaging his reputation."

As to the threatening demands that something be done to punish Mr. Goldie, I will not do so for the following reasons:

1.    Mr. Goldie is an experienced, capable attorney who represented the Plaintiff's father ably, for very little pay, out of compassion for a father who was apparently the victim of a knife attack by his son, who then sued his father for cutting himself with a knife to "frame" his son at the behest of Wal-Mart and other members of some nefarious conspiracy to silence the Plaintiff and end his "crusade" against them. Mr. Goldie in no way deserved this abuse and cannot be faulted for his anger.

2.    The Plaintiff is suffering from a condition that I believe (from over 40 years of dealing with disturbed people) is more serious than Aspergers alone. He is most likely homicidal, is definitely suicidal, as well as paranoid and delusional. I believe that he is a danger to himself and to others, as evidenced by recent overt acts. I am therefore sending a copy of this to the prosecuting attorney and to the Department of Human Services. I have been tempted to declare Mr. Stebbins incompetent on my own notion but believe that it is best to refer it to the proper authorities in Boone County. Plus, I am recusing from this case

1260

by separate order to follow. The second motion for a new trial is at this point the only pending matter and it will remain pending until a new judge can act upon it.

The Plaintiff has repeatedly threatened me and demanded that I recuse, or suffer one his usual lawsuits, mainly because he believes that I am prejudiced against him. Mr. Stebbins constantly confuses prejudice and judgment. An opinion formed of a person over many months of threats, plus three days of personal observation is not prejudice; it is an opinion and judgment based upon the evidence.

I absolutely despise the thought of recusing in this matter as 1) I do not want to dump it on someone else 2) I do not run from threats 3) I do not want to encourage Mr. Stebbins in his belief that he can continue to threaten and attempt to bully others. However, the existence of the emails that were not copied to him could possibly be construed as, however remotely, affecting my judgment in this case. They did not in any fashion nor would the ones that were not read have had any effect if read, as there is other ample evidence to support every decision made. It is, however, necessary to avoid any appearance of a conflict.

With regrets,

Russell Rogers

cc: Mr. David L. Ethredge, Boone Co. Prosecuting Attorney
    Boone Co. Dept. of Human Services
    Boone County Circuit Court Clerk

1261

**David D. Stebbins**
**8527 Hopewell Road**
**Harrison, AR 72601**


April 13ᵗʰ, 2011


David A. Stebbins
1407 N. Spring Road, Apt. #5
Harrison, AR 72601

RE:    David A. Stebbins vs. David D. Stebbins
       Boone County Circuit Court, Civil-General Division No. CV 2011-65-4

Dear David A. Stebbins:

Enclosed you will find a file marked copy of the Answer to Request for Production, a file marked copy of the Answer to Requests for Admissions, a file marked copy of the Answer to Requests for Admissions #2, a file marked copy of the Answer to Request to Permit Inspection and a file marked copy of the Answer to Requests for Admissions #3. Also, please consider this letter to be pursuant to Rule 26(c) of the Arkansas Rules of Civil Procedure as a good faith attempt to confer with the *pro se* Plaintiff in an effort to resolve a dispute without Court action. Your lawsuit is frivolous and you have lost in one Court and it will be thrown out of this Court on the appeal. You are sending massive amounts of discovery requests which are only an annoyance, embarrassment, oppression and an undue burden and expense on the *pro se* Defendant. You are either to stop and cease and desist carrying out this barrage of your weak attempt to create legal documents and your weak attempt to create a legal cause of action against the Defendant. If not, I will file a Motion for Protective Order and ask the Court to deny you total discovery and that you be prohibited from access to the Courts because of your harassing conduct and that you be ordered to pay all costs and expenses incurred by me. You are now hereby on notice. Thank you.

Respectfully,

David D. Stebbins


Enclosure

*Exh. I*

```
 1              of it.  I think I have the right to introduce

 2              evidence.

 3                   THE COURT:  Within limits.

 4                   MR. STEBBINS:  I'm sorry?

 5                   THE COURT:  Within limits, Mr. Stebbins, and

 6              this is getting -- this is repetitive and um, and I'm

 7              not going to comment on the evidence.

 8                   MR. STEBBINS:  All right, will you allow me to

 9              show the evidence that I've alluding to that the

10              defendant was a part of it?

11                   THE COURT:  Yes.

12                   MR. STEBBINS:  Okay.  All right, is um, so are

13              we still on 30?

14                   COURT REPORTER:  Yes sir.

15                   MR. STEBBINS:  Okay.  Okay.

16  BY MR. STEBBINS:

17  A.   Here is Plaintiff's Exhibit 30 -- Exhibits 30 and 31.

18       These are two written statements issued to me by the

19       defendant where he freely admitted that he was prepared to

20       go to the Courts, not necessarily file anything, but

21       actually just go to the Courts and deny me access to the

22       courts, if I didn't stop filing lawsuits, he had -- that

23       he deemed stupid, even if they didn't concern him.  This

24       is Plaintiff's Exhibit 30.  A letter from the defendant.

25       Stating --
```

*Exh. J*

1      MR. GOLDIE:  May we see those Your Honor?  If

2      he's offering those, I have a right to see those.

3      Would you take it from him?

4   [The Bailiff is asked by defense counsel to retrieve the

5   exhibit document from the witness/Plaintiff and hand it to

6   defense counsel.]

7      MR. GOLDIE:  I'm sorry for that.  Your Honor,

8      there's no way we would want to hide anything from

9      the jury but one of them is written in April 2011,

10     the other one is August 29, 2011 both of those dates

11     are before the contract.  One is a letter written out

12     of a lawsuit that the son -- another -- a prior

13     lawsuit that the son had filed against the father in

14     District Court that he's alluded to.  One of the

15     other three that he sued his parents on.  And then

16     the other one is an e-mail where they are talking

17     about whether or not the father has a duty to give

18     his adult son a place to live.

19        MR. STEBBINS:  Can I please --

20        MR. GOLDIE:  Now, the --

21        MR. STEBBINS:  -- provide my testimony?

22        MR. GOLDIE:  -- anything and so I would like the

23     Court to please look at them carefully.  In terms of

24     if they're going to meet what he says that they meet.

25        MR. STEBBINS:  Okay, I'll -- here it is, here's

RaLenn McBee, Official Court Reporter
Circuit Judge Gordon Webb
Harrison, Arkansas  72601

1      with the family have tried to find cheap residence

2      where he could at least stay for a month or two until

3      perhaps I could come to the Court with a -- with the

4      approval of the state with some proposition for him

5      to get some type of treatment.  But I can't deny this

6      is an act of violence.

7          MR. CARTER:  Your Honor, has the Court entered

8      an order.

9          THE COURT:  Pardon.

10         MR. CARTER:  Has the Court entered an order.

11         MR. MARCZUK:  Oh, I do have the mental

12     evaluation issue yes, I am sorry.

13         THE COURT:  No, there is no notation on the

14     record that has even been requested.

15         MR. MARCZUK:  May I approach?

16         THE COURT:  Yes.

17         MR. MARCZUK:  That is the copy that I gave to

18     Wes.

19         MR. CARTER:  We have a copy and Mr. Marczuk has

20     the order.  Your honor, what concerns me is about

21     Mr. Stebbins ability to deal with various situations.

22     The allegations here arose when his father said you

23     can't use the Internet.  And so he proceeded to

24     engage in violence.  And if something like that sets

25     him off and given his past history, a 75,000-dollar

              RaLenn McBee, Official Court Reporter
                   Circuit Judge Gordon Webb
                  Harrison, Arkansas  72601

*Exh. K*

1   bond is not unreasonable and I think with the pending

2   motion before the Court, that the situation that he

3   is in currently, just needs to remain.

4        MR. MARCZUK:  Well, I understand --

5        MR. CARTER:  And I will agree with Mr. Marczuk

6   he does not have a prior felony.

7        MR. MARCZUK:  It is not the jail's fault or

8   your's or my fault, but he is somewhat of a prey,

9   there at the jail and his black eye speaks for

10  itself.  So I don't if you can consider that as a

11  factor.  Perhaps an ankle monitor of some sort.

12       MR. CARTER:  Well, Judge in the State's view,

13  other people in society would be a prey of him.

14       THE COURT:  Well, the Court through previous

15  experience knows Mr. Stebbins to be -- he impressed

16  the Court with his intelligence.  He is capable of

17  substantial understanding of law and legal principles

18  and I would think that that would mitigate in his

19  favor as the Court considers bond.  The Court though

20  has the same problem the State does with the

21  relatively -- I know that there is been a past

22  problem within the family in terms of disagreements

23  and problems.  The Court is having a -- I don't have

24  a place, I don't have any idea where he would live.

25  I don't have any idea of where he would be able to

RaLenn McBee, Official Court Reporter
Circuit Judge Gordon Webb
Harrison, Arkansas  72601



1    insurance I still thought I should give that to him

2    so I did give him a copy.

3         THE COURT:  Okay.  The Court is unfamiliar with

4    what you have indicated about the conflict.  I'm not

5    aware of any.

6         MR. MARCZUK:  He's filed a lawsuit against me.

7         THE COURT:  All right.

8         MR. BRADFORD:  It does not surprise me a whole

9    lot your Honor, not because Mr. Marczuk has done

10   anything to warrant the lawsuit just because that

11   appears to be a pattern of Mr. Stebbins behavior, he

12   has filed lawsuits against other persons as well as

13   including his parents.  There are several civil

14   lawsuits on the docket pending right now in Boone

15   County in which Mr. Stebbins has filed these actions,

16   so.

17        THE COURT:  All right.

18        MR. BRADFORD:  Just to make the Court aware.

19        THE COURT:  Well, at this point, the Court is

20   going to relieve Mr. Marczuk both because of the

21   pending lawsuit and also because of the fact that Mr.

22   Marczuk is leaving the area.  So I am going to

23   relieve Mr. Marczuk of the responsibility to

24   represent Mr. Stebbins at this point.  I will -- I am

25   going to continue at this time to appoint the public

              RaLenn McBee, Official Court Reporter
                  Circuit Judge Gordon Webb
                  Harrison, Arkansas  72601

*Exh. L*

1  PROCEEDINGS HELD JULY 27, 2012:

2         THE COURT:  The Court will call the case

3  2011-324, the State of Arkansas versus David

4  Stebbins.

5         DEFENDANT:  Your Honor, have you received my

6  motion earlier this month?

7         THE COURT:  Yes.

8         DEFENDANT:  Yes, you have, good.

9         THE COURT:  Okay.  At this time, this matter is

10  coming before the Court, Ms. Kennedy I don't know

11  what experience you have had or what opportunity you

12  have had to review the pending issues in this case.

13         MS. KENNEDY:  I have had the opportunity to go

14  over this with my client.

15         THE COURT:  Very good.

16         MS. KENNEDY:  His -- currently what we are

17  waiting on is the psychological evaluation, which has

18  been rescheduled for July the 31st, 2012?

19         MR. BRADFORD:  Your Honor, this will make now

20  the fourth time this evaluation has had to be

21  rescheduled.  Now one time I will concede was due to

22  a scheduling conflict with the examiner but three

23  have been because the defendant will not keep his

24  appointments.  I believe we are relying on the

25  defendants mother to provide his transportation to

                 RaLenn McBee, Official Court Reporter
                       Circuit Judge Gordon Webb
                       Harrison, Arkansas  72601

*Exh. M*

1    those appointments. But quite frankly I feel like

2    with the propensity of this defendant to file

3    lawsuits against anybody that he doesn't like, I

4    think that's factoring into the mothers willingness

5    to provide that transportation. Quite frankly, at

6    this point, I feel like the only way we are going to

7    get this evaluation done is if the examiner knows

8    where this defendant is, which would be in the Boone

9    County Jail, I don't think we're going to get it done

10   any other way.

11        DEFENDANT: That is not true she's not just

12   willing to take me she keeps having car trouble and

13   she has the receipts for the car parts to prove it.

14   She didn't want to do this.

15        THE COURT: Well, mr. Stebbins it is working to

16   your disadvantage to not get this part of the process

17   completed. The whole process is staying the running

18   of speedy trial in your case, delaying our ability to

19   get this case on the trial docket and moved forward.

20        DEFENDANT: I'm doing the best I can Your Honor

21   I really am.

22        THE COURT: Well, you know, you need to

23   cooperate with the whole  -- of the process of

24   getting this evaluation made.

25        DEFENDANT: I am cooperating, it was beyond her

RaLenn McBee, Official Court Reporter
Circuit Judge Gordon Webb
Harrison, Arkansas  72601

**IN THE CIRCUIT COURT OF BOONE COUNTY, ARKANSAS**
**14ᵀᴴ JUDICIAL DISTRICT-CRIMINAL DIVISION**

**STATE OF ARKANSAS**                                        **PLAINTIFF**

**VS.**                              **NO. CR 2011-334-4**              *ORIGINAL*

**DAVID ANTHONY STEBBINS**                                **DEFENDANT**

## PLEA STATEMENT

There are presently criminal charges against you in BOONE County Circuit Court.  Before you make a plea to the charges against you in front of the judge, you must be sure that you understand your rights, the charges against you and their penalties.  The Judge must be sure that you understand the following:

      1.    That you are charged with the following offenses: **DOMESTIC BATTERY IN THE THIRD DEGREE, 5-26-305, CLASS A MISDEMEANOR (AMENDED FROM DOMESTIC BATTERY IN THE SECOND DEGREE, 5-26-304, CLASS C FELONY)**  if you are convicted, you may be imprisoned in the Arkansas Department of Corrections or the BOONE County Jail; and,

      2.    That you have the right to plead not guilty, to be tried by a jury, to confront your accusers and to testify or not.  If you so plead, the State would have the burden of proving your guilt beyond a reasonable doubt.  If you are found guilty by the jury, they will set your sentence and you will have the right to appeal to a higher court.

However, if you are guilty and desire to plead guilty, the Judge, upon accepting your plea of guilty, will decide what your sentence should be.  If you decide to plead guilty, the Judge can only accept your plea if you understand and convince him that you understand the following:

      1.    Do you understand that you are charged with the following offenses of: **DOMESTIC BATTERY IN THE THIRD DEGREE, 5-26-305, CLASS A MISDEMEANOR (AMENDED FROM DOMESTIC BATTERY IN THE SECOND DEGREE, 5-26-304, CLASS C FELONY)** ? _____

      2.    Do you understand that the possible penalties provided by law on the charges against you shall be  up to forty (40) years or LIFE for a Class Y Felony; not less than six (6) years nor more than thirty (30) years and / or a Fine of $15,000.00 for a Class A Felony; not less than five (5) years nor more than twenty (20) years and / or a Fine of $15,000.00 for a Class B Felony; not less than three (3) years nor more than ten (10) years  and / or a fine of $10,000.00, for a Class C Felony; up to six (6) years and / or a Fine of $10,000.00 for a Class D Felony; and up to one (1) year and / or a Fine of $2,500.00 for a Class A Misdemeanor ? _____

      3.    Do you understand that by pleading guilty you give up your right to be tried by a jury and to confront your accusers in court? _____

      4.    Do you understand that by pleading guilty you give up your right to an appeal? _____

*Exh. N*

5.    Are you pleading guilty freely and voluntarily and not because you have been threatened or promised anything in return for the plea? _____

6.    Do you understand that the Prosecuting Attorney and your attorney have agreed to recommend a particular sentence if you plead? _____

**The agreement is the defendant shall plead guilty to the amended charge of BATTERY IN THE THIRD DEGREE, CLASS A MISDEMEANOR and receive a sentence of PROBATION PLUS: one year probation with 163 days in the Boone County Jail. The defendant shall receive jail time credit of 163 days. The defendant shall pay court costs of $150.00; a warrant service fee of $50.00; a booking and administration fee of $20.00; a Public Defender Attorney Fee of $100.00; and pay for stay of $5,710.00. As a condition of probation: 1) the defendant agrees to forfeit his interest in any/all items seized by law enforcement; 2) the defendant shall have no further contact with the victim(s) in this case; 3) all monies shall be paid to the Boone County Sheriff's Office at the rate of $100.00 per month beginning within 30 days; 4) the defendant must dismiss any/all pending Pro Se lawsuits; 5) the defendant shall not file any Pro Se lawsuits while on probation; 6) the defendant shall be assessed for mental health treatment and follow all recommendations; 7) the defendant shall complete an anger management course as directed by his probation officer.**

7.    Do you accept this agreement? _____

8.    Have you discussed your case fully with your [attorney and are you satisfied with] his services and advise? _____

I have personally read everything on this plea state[ment and answered each] question. I fully understand my rights and I am voluntarily [pleading guilty to each] of the charges against me.

*Pretrial Motion to Dismiss re Vindictive Intent*

*- No on Lawsuits Condition*
*- No Contest*
*- Can Serv vs Costs.*

_____

**DEFENDANT**

I have fully gone over the charges, penalties and the [facts in this] matter. In my judgment, the defendant understands each [and is] voluntarily entering his plea of guilty.

_____        _____
**DATE**                                                         **ATTORNEY FOR THE DEFENDANT**

_____
**CIRCUIT JUDGE**

1          witness being dragged here for no reason for.

2                  MR. STEBBINS:  I, okay, fine, I'll waive the

3          privilege, for God's sakes.

4                  THE WITNESS:  Okay.

5     A.   Wes Bradford made a plea offer.  I had asked in general

6          about plea offers, I had not asked for it for the specific

7          plea offer that he made --

8     Q.   Okay, I'm about to --

9     A.   -- and the plea offer that he made, did in fact, was

10         contingent on you dismissing litigation.  That is true

11         that happened.

12    Q.   This is a copy of Plaintiff's Exhibit 28.  Is this a copy

13         of the plea offer that Wes Bradford had submitted?

14    A.   It appears to be.

15    Q.   Okay.  Okay.  Look on the back.  Do you see where a

16         scanned version of a Post-it note was placed on the

17         original version of this plea offer, which state's "motion

18         to dismiss for vindictive intent"?

19    A.   On -- yeah.

20    Q.   Is that your handwriting?

21    A.   Yes, these are -- these are notes from a meeting you and I

22         had where we discussed that possibility?

23    Q.   Okay, did you tell Wes Bradford that you believed that

24         this plea offer was violating my constitutional rights?

25    A.   I am trying to recall accurately whether I told him I

                    RaLenn McBee, Official Court Reporter
                          Circuit Judge Gordon Webb
                          Harrison, Arkansas  72601

*Exh. O*

1    believed it was violating your constitutional rights or

2    whether I told him I believed it could be seen as

3    violating your constitutional rights.

4    Q.   Okay --

5    A.   I don't remember if I made the distinction exactly one way

6    or the other but I do you remember he and I having that

7    conversation.

8    Q.   Okay.  When he -- when you mentioned that, did he point

9    out that he believed that I had some sort of mental health

10   issue that caused me to file frivolous lawsuits?

11   A.   Yes, he did say that.

12   Q.   Uh-huh, and did he ever at any point decide to withdraw

13   not just those two demands, but the entire plea offer

14   altogether, just out of spite because you had accused him

15   of wrongdoing?

16   A.   I don't know if I want to -- to speculate as to his mental

17   state as to why he did it but he did -- when I told him

18   that we weren't going to accept the plea offer with the

19   condition of the -- these -- these onerous conditions

20   involving the lawsuits, when I told him that, he did

21   withdraw the plea offer altogether and threatened to

22   withdraw all plea offers and go to trial on a felony

23   charge.  Yes, that happened.

24   Q.   So -- so would it appear from his actions there that it

25   seemed like he was mostly concerned with getting me to

1              THE CLERK:  Take a seat up there.

2              MR. JASON JONES, called as a witness herein, having

3    been first duly sworn on oath, testified as follows:

4                        DIRECT EXAMINATION

5    BY MR. STEBBINS:

6    Q.    Name and occupation?

7    A.    Jason Chad Jones.  Assistant Manager of Brookstone.

8    Q.    Brooks who?

9    A.    Brookstone.

10   Q.    What is that?

11   A.    It's a technology gift store.

12   Q.    Okay.  You own and operate the local wrestling promotion

13         here in Harrison, Arkansas, do you not?

14   A.    Yes Sir.

15   Q.    At the time I was incarcerated you were serving as a jail

16         guard at the Boone County Detention Center; correct.

17   A.    Yes sir.

18   Q.    I had previously filed a lawsuit against you in connection

19         with your wrestling promotion; correct?

20   A.    For $300 million, is that the one.

21   Q.    Is that --

22   A.    Yes sir --

23   Q.    Did I --

24   A.    Yes sir.  Yes sir.  Which time, is that the right time?

25   Q.    When I was incarcerated, you knew about all the lawsuits I

                    RaLenn McBee, Official Court Reporter
                         Circuit Judge Gordon Webb
                         Harrison, Arkansas  72601

*Exh. P*

```
 1       had filed didn't you?
 2  A.   Some of them I learned on Google.
 3  Q.   And what -- and what exactly was -- so you basically just
 4       looked me up; is that correct?
 5  A.   I started looking you up when you sued me for $306 million
 6       dollars, sir.
 7  Q.   So, what was your purpose for wanting -- why did you even
 8       care so much that you wanted to look up other litigation
 9       history that I -- that didn't even concern you?  Is it
10       because you knew I was coming to the jail?
11  A.   No Sir.  I did not know you were coming to the jail.  I
12       wanted to know what drove a person to think a person that
13       works a forty-hour a week job, has a family, has $306
14       million dollars for a --
15  Q.   And why should --
16  A.   -- for a legitimate claim.
17  Q.   And why should we trus -- just blindly trust your word on
18       that?
19  A.   Because I just swore to her that I'm telling the whole
20       truth and nothing but the truth.
21  Q.   And that apparently physically forces you to tell the
22       truth, even if you wanted to lie?
23  A.   I gave my oath.
24  Q.   So you think is of the world of Harry Potter, where if you
25       make an unbreakable vow --
```

RaLenn McBee, Official Court Reporter
Circuit Judge Gordon Webb
Harrison, Arkansas  72601

**REHABILITATION INITIAL DIAGNOSIS AND ASSESSMENT FOR CLIENTS**
**ARKANSAS REHABILITATION SERVICES**
**4058 NORTH COLLEGE AVENUE, SUITE 150, FAYETTEVILLE, AR 72703**

****This confidential report is generated for Arkansas Rehabilitation Services use only for the purposes of determining eligibility and program planning. It is not to be utilized as a stand-alone document for treatment purposes, and is the property of Arkansas Rehabilitation Services. It is not to be released to any third party. ****

### RECORDS REVIEW

NAME: David Stebbins
SEX: Male                          COUNSELOR: Amy Jones
DATE OF BIRTH: 12-29-88     DATE OF REVIEW: 12-15-15
REASON FOR REVIEW: to assist in determining feasibility of VR services/training

### EVALUATION PROCEDURES

Review of mental health treatment records from St. Bernard's Healthcare dated April 24-30, 2-15

### RECORDS REVIEW

Records from St. Bernard's indicated Mr. Stebbins had been transferred to their facility from Northwest Arkansas Regional Medical Center after a suicide attempt. The client received inpatient treatment at St. Bernards from April 24 through April 30. Discharge diagnoses were reported as follows:

Major Depressive Disorder, recurrent, severe
Asperger's' Disorder
Delusional Disorder NOS
Cluster B personality disorder traits (narcissistic and antisocial)

Mr. Stebbins indicated he attempted suicide by drinking bleach after he sued his father and lost. Records indicated he was arrested in 2011 for assaulting his father. Records also indicated he was kicked out of the U of A for making threatening statements. The client reported frustration, anger and depression over his situation. He denied homicidal ideation, but continued to report death wishes if he could 'die without pain'. Treatment records indicated Mr. Stebbins was impulsive, lacked insight, paranoid, irritable and agitated.

Treatment records indicated Mr. Stebbins feels he is chronically targeted by the government and law enforcement because he 'has the brains to be a leader and change things'. He acknowledged perseverative thoughts regarding this issue. A search of public records revealed multiple lawsuits filed by Mr. Stebbins against his parents, Wal-Mart, the U of A, and federal judges. Causes of action were mainly civil rights and discrimination.

At discharge, Mr. Stebbins denied suicidal or homicidal ideation. Safety planning was done and he was discharged home. He has indicated to Amy Jones that he is not currently in treatment for his mental health issues.

*Exh. Q*

Documents Review – David Stebbins                                    2

## DSM-5 DIAGNOSTIC IMPRESSIONS

See client records

## VOCATIONAL IMPLICATIONS

Following is a list of ways in which the individual's observed or reported problem areas are likely to be manifested in a vocational setting.

IMPULSIVITY MAY RESULT IN POOR CHOICES IN JOB ENVIRONMENT
DEPRESSION MAY INTERFERE WITH COUNSELING/JOB INTERVIEWS
MAY BE SOURCE OF DISTRACTION TO CO-WORKERS
DIFFICULTY ASSESSING CONSEQUENCES OF DECISION ALTERNATIVES
DIFFICULTY RELATING WITH INSTRUCTORS/STUDENTS/CO-WORKERS
DIFFICULTY PERFORMING WORK TASKS WHICH INVOLVE PEOPLE
DIFFICULTY CHANGING BEHAVIOR TO MEET REQUIREMENTS
EMOTIONAL INTENSITY MAY INTERFERE WITH TASK PERFORMANCE
CONFLICTS MAY PRECLUDE ADEQUATE TASK PERFORMANCE

## CONCLUSIONS AND RECOMMENDATIONS

Documentation available, which indicated a history of physical aggression and threatening statements, suggests that Mr. Stebbins is not currently appropriate for vocational rehabilitation services.

A referral to a local mental healthcare provider is strongly recommended. Mr. Stebbins would likely benefit from treatment and the support of a therapeutic relationship. Efforts to work with Mr. Stebbins should be coordinated with his treatment providers. His vocational success will depend on him stabilizing and effectively managing his psychiatric issues.

In order for Mr. Stebbins to be appropriate for ARS services he should be able to demonstrate a period of stable functioning. He will also need to provide documentation from his mental healthcare providers that his symptoms are well-managed and they agree he is ready for training, school or work.

_Leslie S. Johnson_
_____
Leslie S. Johnson, MS
Licensed Psychological Examiner – Independent Practice

1
2
3
4
5
6
7
8
9
10  A.
11
12
13
14
15
16
17
18
19
20

21    MR. STEBBINS:  Oh, thirty -- oh, okay,

22    Exhibit 38, see that prece -- that Supreme Court case

23    was from the year 1993.

24    Exhibit 38, this is a copy of -- this is a printout

25    of an inflation calculator proving that since year 1993

RaLenn McBee, Official Court Reporter
Circuit Judge Gordon Webb
Harrison, Arkansas  72601

*Exh. R*

```
 1    the value of $10 million dollars has gone up to

 2    approximate -- as -- had the buying power in 1993 of

 3    approximately $16,173,000 in 2015. ~~So, by asking for~~

 4    ~~10 million, I'm actually think I'm being generous to send~~

 5    ~~a powerful message that this sort of garbage isn't~~

 6    ~~supposed to be -- going to be tolerated by our~~

 7    ~~governments.~~

 8        ~~And that's just for the punitive damages. Imagine~~

 9    ~~the emotional damages that I have suffered, that I think~~

10    ~~I -- I am going to show here -- but me -- I'm going to~~

11    ~~just a taste of what I've -- as the sort of damages that I~~

12    ~~have been shown -- the sort of the that sort of emotional~~

13    ~~damages that I suffered. I have -- in the last few years~~

14    ~~to complete and utter destitution and poverty because of~~

15    ~~what these people have done about me that I --~~

16    ~~Now, for this next one, I recall a witness who~~

17    ~~affirmatively refused to give me his address to be~~

18    ~~subpoenaed. I'm going to play for you the recorded phone~~

19    ~~call that I have.~~

20        ~~MR. COBEN: I'm going to object to playing the~~

21    ~~transcript or anything, your Honor, and whether a~~

22    ~~witness refused to give an address or not, this has~~

23    ~~got nothing to do with this case. He had his remedy~~

24    ~~to get this Jim -- who could say before the court~~

25    ~~once, when the trial started, he's at that point.~~
```

RaLenn McBee, Official Court Reporter
Circuit Judge Gordon Webb
Harrison, Arkansas  72601

1    to leave.  What parent would not otherwise, you know

2    sadly, but do that.

3        So that's where we are on September 26, 2011.

4    There were some problems, which there will be some

5    testimony about, but we anticipate the father will

6    testified that he pretty much tried to avoid the son.

7    Uh, father works, son is on disability so the son is

8    just hanging around.  So the father works, comes

9    home, pretty much stays in his bedroom, tries to

10   avoid any conflict.

11       Now comes November 24, 2011, Thanksgiving,

12   Thanksgiving Day.

13       We anticipate the testimony will be that there

14   was Thanksgiving dinner at noon.  The father, the

15   mother, the adult daughter and her two children, and

16   the son.  Son, as typical, chose to eat in his

17   bedroom wouldn't even eat Thanksgiving with his

18   family, must be a conspiracy there.  Mother leaves at

19   1:00 o'clock to go to work.  She's working up at

20   Ridgedale at Wild Bill's at this time.  About

21   3:00 o'clock or so, the adult daughter leaves with

22   her two children, the grandkids, and they live about

23   100 yards away, down the road from the father and

24   mother.

25       Roughly, starting at about 6:00 o'clock, these

RaLenn McBee, Official Court Reporter
Circuit Judge Gordon Webb
Harrison, Arkansas  72601

*Exh. 5*

```
 1   Q.   Now, have you heard any evidence from your son as to what
 2        his reputation is in the community?
 3   A.   None.
 4   Q.   Okay.  Did you hear what your son said about the federal
 5        appeals judges in St. Louis?
 6   A.   Yes, they are part of the conspiracy.
 7   Q.   Did your hear what he said about the federal district
 8        judges in Fayetteville and Fort Smith?
 9   A.   They are also part of that big conspiracy.
10   Q.   Did you hear what your son said about the federal
11        magistrate in Fort Smith?
12   A.   Also.
13   Q.   Did you hear what your son said about Circuit Judge Gordon
14        Webb here from Harrison?
15   A.   Uh, that he was corrupt and part of the conspiracy.
16   Q.   Did you hear your son say what he said about our Sheriff,
17        Mike Moore?
18   A.   The same thing, part of the conspiracy to have him
19        arrested.
20   Q.   Okay.  And that you are part of the conspiracy right?
21   A.   Yes, ringleader, I guess.
22   Q.   And then he threw out the $500 billion lawsuit against
23        Microsoft so he can throw Bill Gates in there too?
24   A.   Right.
25   Q.   As part of the conspiracy too, right?
```

RaLenn McBee, Official Court Reporter
Circuit Judge Gordon Webb
Harrison, Arkansas  72601

*Exh. T*

1   the case you are trying to prove?

2        MR. STEBBINS:  Yes.

3        THE COURT:  And this is --

4        MR. STEBBINS:  It --

5        THE COURT:  You can say almost anything is

6   remotely connected somehow but we could be here for

7   three weeks on this case too.  We are not.  This is a

8   case was set for one day.  Nobody objected to it

9   being set for one day, we are going to try to do it

10  in one day.

11       MR. STEBBINS:  I did not know it was set for one

12  day.  I thought it was set to start at April 8th.  If

13  I had known it was set for one day, I would have

14  objected.

15       THE COURT:  You can read the order again

16  Mr. Stebbins, it was just set for April the eighth.

17       MR. STEBBINS:  Can I at least testify to what

18  this law is to explain how it shows that they feel

19  they can get away with it?

20       THE COURT:  This is some more proof of the

21  conspiracy, worldwide conspiracy to deprive you of --

22       MR. STEBBINS:  Is not worldwide sir.

23       THE COURT:  Just Arkansas.

24       MR. STEBBINS:  Yes.  The law of sovereign

25  immunity basically says that the government cannot be

RaLenn McBee, Official Court Reporter
Circuit Judge Gordon Webb
Harrison, Arkansas  72601

Exh. U

1 instructions and other matters.

2   THE COURT:  Sure.

3   MR. GOLDIE:  I'm concerned from the statements

4 that Mr. Stebbins is making today, this morning, that

5 he plans to go into all these other things, which the

6 Court found not issues in the case and maybe the

7 Court would like to address that?

8   MR. STEBBINS:  The thing is, I don't see how the

9 Court has the authority to toss out my claims sui

10 sponte if I fail -- if I have stated a claim upon

11 which relief can be granted.  For that matter, if

12 battery is an issue, then whether the -- the fact the

13 defendant's lacerations were self-inflicted or not is

14 obviously relevant to the battery and also solely is

15 mentor or not the arrest was actually planned with --

16   COURT REPORTER:  Could we please hold it down,

17 we are still holding proceeding up here.

18   MR. STEBBINS:  And whether the arrest was

19 planned between the defendant and the arresting

20 agency is also relevant towards it lending credence

21 that the knife attack most likely did not occur.  So,

22 even if you're not going to let me proceed on the

23 civil conspiracy and malicious prosecution and an

24 abuse of process claims they are still relevant to

25 the battery anyway.

   RaLenn McBee, Official Court Reporter
    Circuit Judge Gordon Webb
    Harrison, Arkansas  72601

*Exh. V*

1          THE COURT:  Well, that's part of the issue about

2     whether there was a battery.  Yes.  We can do that.

3          MR. STEBBINS:  Thank you.

4          THE COURT:  That will still be open.

5          MR. GOLDIE:  Okay.

6          (Whereupon, the conference at the bench was

7     ended, and the parties returned to open court, again

8     within the hearing of the jury:).

9          THE COURT:  You can go ahead, Mr. Stebbins.

10          MR. STEBBINS:  Yes Sir.  On November 24, 2011, I

11     was arrested by a deputy of the Boone County

12     Sheriff's Department on charges -- on the charge of

13     domestic battery.  The defendant accused me of

14     attacking him with a knife.  I was arrested not

15     because I actually did anything wrong or because the

16     arresting cop genuinely believed me guilty of a knife

17     attack but because they planned it.  Oh, yes.  I went

18     there.  The defendant cut himself with the knife and

19     yes, I can prove it because he had punched me in the

20     face.  He knew from a previous physical altercation

21     between me and -- between himself and me, that he

22     would be arrested if I had any physical marks on my

23     body and he didn't.  So he flew into a panic and

24     proceeded to cut himself with a knife.

25          Now, I do not believe that was the original

RaLenn McBee, Official Court Reporter
Circuit Judge Gordon Webb
Harrison, Arkansas  72601

# What is Delusion?

 www.news-medical.net

By Sally Robertson

By Dr Ananya Mandal, MD

Delusion refers to a strongly held belief despite evidence that the belief is false.

Delusion usually occurs as a result of a neurological problem or a mental illness. However, delusion is not associated with any one disease in particular and has been found to manifest as a feature of various different physical and mental illnesses. Delusion is a typical clinical feature in psychotic disorders such as schizophrenia, bipolar disorder, and paraphrenia.

According to the most recent version of the Diagnostic and Statistical Manual of Mental Disorders (DSM IV), delusion is defined as: "A false belief based on incorrect inference about external reality that is firmly sustained despite what almost everyone else believes and despite what constitutes the inconvertible and obvious proof or evidence to the contrary."

This definition does not extend to beliefs that are generally accepted by members of the person's culture, as part of their faith, for example.

## History of delusion

Psychiatrist and philosopher Karl Jaspers first described the three main criteria that need to be met for a belief to be diagnosed as delusional. These were outlined in his 1917 work called "General Psychopathology" and include the following:

- The false belief is held with absolute certainty or conviction
- The belief remains unchanged despite proof that it is not true
- The belief is false, implausible, bizarre or impossible

An example of a bizarre delusion would be a belief that is strange and implausible such as a person believing aliens have removed part of their brain. An example of a non-bizarre delusion would refer to something that could potentially occur such as the person being poisoned or followed.

For an individual to be diagnosed as delusional, the belief cannot be occurring as a result of using drugs or a general medication and the person must be free of any history of schizophrenia.

Reviewed by Sally Robertson, BSc

## Sources

## Further Reading

Exh. W

# Definition of delusion

www.merriam-webster.com

## delusion

play

*noun* de·lu·sion \di-'lü-zhən, dē-\

1.  *1* :  the act of deluding :  the state of being deluded

2.  *2 a* :  something that is falsely or delusively believed or propagated *b* :  a persistent false psychotic belief regarding the self or persons or objects outside the self that is maintained despite indisputable evidence to the contrary; *also* :  the abnormal state marked by such beliefs

### delusional

play \-'lüzh-nəl, -'lü-zhə-nəl\ *adjective*

### delusionary

play \-zhə-,ner-ē\ *adjective*

## Examples of *delusion* in a sentence

1.  He has *delusions* about how much money he can make at that job.

2.  He is living *under the delusion* that he is incapable of making mistakes.

3.  She is *under the delusion* that we will finish on time.

4.  As the illness progressed, his *delusions* took over and he had violent outbursts.

## Origin and Etymology of *delusion*

Middle English, from Late Latin *delusion-, delusio,* from *deludere*

First Known Use: 15th century

## *delusion* Synonyms

Synonyms

chimera, conceit, daydream, fantasy, dream, fancy, figment, hallucination, illusion, nonentity, phantasm (*also* fantasm), pipe dream, unreality, vision

Antonyms

truth, verity

*Exh. X*    1/1